UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
AXOS BANK, *a federally chartered savings bank*,

                                 Plaintiff,

                    -against-

64-03 REALTY LLC, WING FUNG CHAU, *and* WENDY CHAU,

                                 Defendants.
--------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
20 CV 3549 (RPK) (CLP)

**POLLAK**, Chief United States Magistrate Judge:

On August 6, 2020, plaintiff Axos Bank commenced this action, seeking to enforce a

Business Promissory Note and Security Agreement (the "Note") against defendant 64-03 Realty

LLC ("64-03"), and the Guarantors on the Note, defendants Wing Fung Chau and Wendy Chau

(the "Chau defendants"). (Am. Compl.[1] ¶¶ 1, 4, 6). Currently pending before this Court is

defendant 64-03's motion to vacate the certificate of default that was entered against it on

January 11, 2021. (See ECF No. 32; Def.'s Mot.[2]).

                    FACTUAL AND PROCEDURAL BACKGROUND

The Complaint in this case was filed on August 6, 2020. (See ECF No. 1). The

Amended Complaint was filed on August 24, 2020, before defendants answered. (See Am.

Compl.). On September 9, 2020, all defendants answered and filed counterclaims against

plaintiff. (See ECF No. 16). On October 12, 2020, defendants' first counsel, Janet Esagoff,

---

[1] Citations to "Am. Compl." refer to plaintiff's First Amended Complaint, filed on Aug. 24, 2020, ECF No. 10. Plaintiff filed the Amended Complaint after the district court noted that plaintiff failed to properly allege diversity jurisdiction with regard to defendant 64-03 and Ordered plaintiff to file an amended complaint. (See Order, entered Aug. 11, 2020).

[2] Citations to "Def.'s Mot." refer to defendant 64-03's motion to vacate the certificate of default entered against it, filed Apr. 13, 2022, ECF No. 55-1.

Esq., filed a motion to withdraw as to all defendants. (See ECF No. 21). On November 10, 2020, Kevin K. Tung, Esq., filed a notice of appearance on behalf of the Chau defendants, but not on behalf of 64-03. (See ECF No. 26). On November 16, 2020, this Court granted Ms. Esagoff's motion to withdraw and Ordered Mr. Tung to notify the Court by November 20, 2020 whether he also represented defendant 64-03. (See ECF No. 27).

On January 8, 2021, Mr. Tung filed an Amended Answer on behalf of the Chau defendants. (See ECF No. 31). After Mr. Tung failed to notify the Court that he represented defendant 64-03, plaintiff filed a request seeking to have the Clerk enter default against 64-03 on December 17, 2020, which was noted on January 11, 2021. (See ECF Nos. 28, 32). Thereafter, on August 23, 2021, plaintiff filed a motion for default judgment against defendant 64-03. (See ECF No. 41).[3] On September 15, 2021, the motion for default judgment was referred to the undersigned by the Honorable Rachel P. Kovner to prepare a Report and Recommendation.

On September 23, 2021, Mr. Tung filed a motion to withdraw as attorney for the Chau defendants, stating that communications with his clients had been difficult. (See ECF No. 43). After several extensions and conferences regarding the motion, the Court granted Mr. Tung's motion, Ordering the Chau defendants to obtain counsel or notify the Court of their intent to proceed *pro se*. (See ECF Nos. 45, 47, 48). On January 3, 2022, William X. Zou, Esq., filed a notice of appearance on behalf of all defendants, including defendant 64-03. (See ECF No. 50). As a result, the Court set a status conference for February 15, 2022.

At the February 15, 2022 conference, defendants' new counsel notified the Court of his intent to file a motion to vacate the entry of default against defendant 64-03 and plaintiff's

---

[3] Plaintiff previously filed a motion for default judgment against 64-03 that was denied without prejudice because the motion did not comply with Local Rule of the United States District Courts for the Southern and Eastern Districts of New York 7.1 in that plaintiff failed to submit a memorandum of law in support of its motion. (See ECF No. 39; Order Adopting R&R, filed Aug. 24, 2021).

2

counsel stated that plaintiff would oppose the motion.  (See Minute Entry, dated Feb. 16, 2022).

Accordingly, the Court set a briefing schedule, noting that, if plaintiff agreed to voluntarily

vacate the default, it should notify the Court.  (Id.)[4]

On April 13, 2022, the parties, pursuant to Judge Kovner's bundling rule, submitted the

fully briefed motion.  (See Def.'s Mot.; Pl.'s Opp.;[5] Def.'s Reply[6]).

### A. Defendant's Arguments

First, defendant 64-03 states that when Mr. Tung filed a notice of appearance on behalf of

the Chau defendants, he was actually "engaged by all Defendants."  (Def.'s Mot. at 2).

Defendant attributes Mr. Tung's failure to file a notice of appearance on behalf of 64-03 to a

"miscommunication or ineffective legal representation of incompetent counsel," arguing that its

default was not willful.  (Id. at 3-4).  Further, defendant notes that Mr. Chau is "the sole owner

and Manager of 64-03" and has been the "sole contact person with attorneys for Defendants in

this matter" but Mr. Chau was "quite surprised" when his current counsel, Mr. Zou, informed

him that a default had been entered against 64-03.  (Id. at 4; see Chau Decl.[7] ¶ 3).  Mr. Chau, in a

declaration, asserts that he engaged Mr. Tung to represent all the defendants in this matter, and

that Mr. Tung failed to notify him of the default against 64-03.  (Def.'s Mot. at 4; Chau Decl. ¶¶

5-6).  Defendant 64-03 also disputes that the default was "strategic[]," stating that it has

"consistently retained counsel to represent it."  (Def.'s Reply at 3).

---

[4] The Court notes that there is a pending motion to compel discovery filed by plaintiff, seeking discovery from the Chau defendants.  (See ECF Nos. 36-37).  Since the decision on the motion to vacate will impact which defendants will engage in discovery, the Court has not addressed the discovery issue and will only do so once the instant motion is decided.

[5] Citations to "Pl.'s Opp." refer to plaintiff's Memorandum in Opposition to defendant's motion to vacate, filed Apr. 13, 2022, ECF No. 55-2.

[6] Citations to "Def.'s Reply" refer to defendant's Reply Memorandum in Support of its motion to vacate, filed Apr. 13, 2022, ECF No. 55-3.

[7] Citations to "Chau Decl." refer to defendant Wing Fung Chau's Declaration in Support of 64-03's motion to vacate, attached as an Exhibit to Def.'s Mot., filed Apr. 13, 2022, ECF No. 55-1.

Defendant 64-03 also contends that it has meritorious defenses to this action, stating that "the underlying [Note] could be the result of possible misrepresentation, fraud[,] or predatory practices" and arguing that the Note is "usurious because of its excessive charges, fees[,] and extremely high interest rates." (Def.'s Mot. at 5).   Defendant 64-03 asserts that Mr. Chau, acting on behalf of 64-03, signed the Note without legal representation when 64-03 was "experiencing financial hardship."  (Id.)  Indeed, 64-03 alleges that the mortgage broker "basically completed all the loan applications herself" and arranged an attorney for defendant, but the attorney never met with any of the defendants.  (Id.)  Elaborating on its argument that the interest rate is usurious, 64-03 calculates the interest rate on the Note to be 35% per annum, noting that "charging more than 25% upon a corporation or LLC is criminal usury" in New York.  (Id. at 6 (citing N.Y. GOL § 5-501(2))).  Defendant 64-03 further cites to this Court's recommendation, later adopted by the district judge and denying plaintiff's first motion for default judgment, which recommended that plaintiff "should include in its memorandum of law a discussion of the interest rate applied" to the underlying loan, for the proposition that the interest rate may serve as a meritorious defense.  (Def.'s Reply at 3-4).   Additionally, 64-03 points to the COVID-19 pandemic, arguing that "impossibility, practicability, frustration of purpose, *force majeure* and/or government action are meritorious defenses."  (Id. at 4).  As its final meritorious defense, defendant 64-03 argues that the amount sought by plaintiff is "subject to offset and adjournment" and that "there is no basis for [the] prepayment premium" sought in this action. (Def.'s Mot. at 6).

Defendant 64-03 contends that if the default is vacated, there will be no prejudice to plaintiff in the form of delay, because "the proper remedy" was a "traditional foreclosure action to recover under the underlying [N]ote."  (Id.)  Defendant notes that since there was a foreclosure

moratorium due to the pandemic, plaintiff would have been unable to foreclose on the Property anyway until January 15, 2022. (Id.) Defendant also disputes plaintiff's claim that there will be a "loss of evidence" or "substantial difficulties of discovery," noting that "64-03 stands ready[,] willing[,] and able to actively and diligently" engage in discovery. (Def.'s Reply at 5).

### B. Plaintiff's Arguments

First, plaintiff disputes that defendant 64-03's default was not willful, stating that the "record is replete with representations by Mr. Tung . . . that Mr. Chau asked him to appear solely on behalf of" the Chau defendants. (Pl.'s Opp. at 10). Plaintiff argues that it is "hard to believe" that Mr. Tung did not notify the Chau defendants of the certificate of default or plaintiff's default judgment motions. (Id. at 11). Plaintiff also states that 64-03's default was "strategic," citing to the fact that it is currently "in default to its senior lender," which is the subject of a state court action in Queens County. (Id. at 11, n.6). Plaintiff further notes that Mr. Tung withdrew from representing the Chau defendants because they were "nonresponsive and noncooperative." (Id. at 12). Lastly, plaintiff argues that 64-03's default was willful because Mr. Chau "cannot plausibly claim that he is unsophisticated or otherwise under some disability in communicating with his attorneys," citing "three dozen real estate related litigations" that have named Mr. Chau as a defendant. (Id.)

As to the merits of 64-03's defenses, plaintiff states that none "of the apparent defenses . . . was specifically pleaded in the twenty affirmative defenses" in defendants' original Answer, (Pl.'s Opp. at 2 n.3), but acknowledges that the Answer states that plaintiff's "lending practices are violative of statutory laws, consumer protection laws, and predatory lending." (Id. at 13 n.7). Plaintiff also notes that 64-03's motion "does not cite any legal authorities to identify Mr. Chau's claimed defenses." (Id. at 14).

5

In response to defendant 64-03's fraud allegation, plaintiff argues that 64-03 will be unable to establish that there was a "material misrepresentation of fact or justifiable reliance" that induced Mr. Chau to sign the Note, noting, among other things, Mr. Chau's real estate experience and the fact that the attorney for defendants on the Note issued an opinion letter. (Id. at 15). Plaintiff disputes defendant 64-03's claim of duress, stating that there are no allegations that plaintiff "engaged in any coercive acts or that 64-03 had no commercially reasonable course of action but to take Plaintiff's funding." (Id. at 17). As to unconscionability, plaintiff argues that there was no procedural or substantive unconscionability, both of which are required for the defense. (Id. at 18). Plaintiff notes that the first page of the Note "contains all information about the payments schedule, interest charges and prepayment premium . . . [which] Mr. Chau admits to reading," disputing any procedural unconscionability. (Id.) As to substantive unconscionability, plaintiff contends that this argument is preempted by federal law because the loan "was made by a federal savings association." (Id. at 19). As to usury, plaintiff argues that the "rates are clearly lawful under governing federal and Nevada law, while New York usury laws . . . are preempted." (Id.) Citing the Home Owners' Loan Act of 1933 ("HOLA"), plaintiff states that, because it has a Nevada office and is a federal saving association, it may "charge interest at the maximum rate of interest in the state in which it is located"—here, Nevada. (Id. at 20). Since Nevada has "*no maximum rate of interest*," plaintiff argues that the interest rate here is lawful. (Id. at 21 (emphasis in original)). Plaintiff further argues that, even if defendant 64-03 is entitled to offset, "that goes to the calculation of Plaintiff's damages and is not a basis to vacate" the default. (Id. at 23).

Lastly, plaintiff argues that it will be prejudiced by vacatur, stating that the "delay, and inability of Plaintiff to obtain discovery directly from 64-03, which defaulted for more than a

year . . . likely resulted in the loss of evidence and created substantial difficulties of discovery." (Id. at 25).

DISCUSSION

**A. Legal Standard**

Pursuant to Federal Rule of Civil Procedure 55(c), the Court may set aside an entry of default for good cause.  The standard for setting aside the entry of a default pursuant to Rule 55(c) is less rigorous than the "excusable neglect" standard for setting aside a default judgment by motion pursuant to Federal Rule of Civil Procedure 60(b).  Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981).  The main factors—otherwise known as the Enron factors—for the Court to consider in determining the appropriateness of relieving a party of a default are whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented.  Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993); Meehan v. Snow, 652 F.2d at 277.  Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result.  Id.[8]  Further, "none of these factors is determinative and all three must be considered."  Murphy v. Snyder, No. 10 CV 1513, 2013 WL 934603, at *4 (E.D.N.Y. Mar. 8, 2013), report & recommendation adopted, 2013 WL 1335757 (E.D.N.Y. Mar. 29, 2013).

The party seeking relief from an entry of default bears the burden of proof.  Aetna Life Ins. Co. v. Licht, No. 03 CV 6764, 2004 WL 2389824, at *3 (S.D.N.Y. Oct. 25, 2004) (quoting

---

[8] The Court notes that other equitable factors, such as the fact that the Chau defendants' "primary residence is at stake" weighs in favor of vacating the entry of default.  See Eastern Sav. Bank, FSB v. Johnson, No. 13 CV 6070, 2020 WL 1452461, at *3 (E.D.N.Y. Mar. 25, 2020) (collecting cases). However, since the Court finds that all three factors weigh in favor of vacating the default, the Court has not addressed the equitable factors separately. (See discussion supra at 8-16).

In re Martin-Trigona, 763 F.2d 503, 505 n. 2 (2d Cir. 1985)).  However, defaults are not favored, and doubts are to be resolved in favor of a trial on the merits.  Meehan v. Snow, 652 F.2d at 277; see Eastern Sav. Bank, FSB v. Johnson, 2020 WL 1452461, at *2 (noting that the factors "must be construed in light of the Second Circuit's 'strong preference for resolving disputes on the merits'" (quoting New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005))).

In this case, it is clear that defendant 64-03 is in default.  However, the Court must determine whether there is good cause to vacate the entry of default.

**B. Analysis**

1. Willfulness

Turning first to willfulness, the test for willfulness is not simply whether a defendant was properly served and failed to respond.  Instead, the relevant inquiry for determining willfulness relates to the defaulting party's actions after it became aware of the existence of the litigation *or* entry of default.  Prestige Capital Corp. v. Fuber LLC, No. 16 CV 9577, 2017 WL 2558803, at *2 (S.D.N.Y. June 5, 2017) (citing Swarna v. Al-Awadi, 622 F.3d 123, 142-43 (2d Cir. 2010)); In re FKF 3, LLC, 501 B.R. 491, 502 (S.D.N.Y. 2013) (overturning finding of willful default despite defaulting party's admittance of its awareness of the action, proper service, and party's failure to respond to motion for default judgment, and stating that the failure of the defaulting party to enter an appearance until a month after learning of the matter, "while negligent, [did] not rise to level of willfulness").

There must be "more than mere[] neglect or carelessness" to support a finding of willfulness.  Aetna Life Ins. Co. v. Licht, 2004 WL 2389824, at *4 (finding defendant's explanations for letting the case "languish" plausible and acceptable).  A finding of willfulness does not require that the default occurred due to bad faith, but the default must be the "deliberate

and intended consequence of movant's actions." Id. (citing Gucci Am., Inc. v. Gold Ctr. Jewelry, 158 F.3d 631, 635 (2d Cir. 1998)). "Conduct may be found to be willful where it is egregious, not satisfactorily explained, or is rationalized by flimsy excuse." Id.

In Swarna v. Al-Awadi, for example, the Second Circuit found that the district court had improperly granted a default judgment where the individual defendants appeared in the action to file a memorandum opposing the entry of a default judgment, despite their failure to answer the complaint. 622 F.3d at 142. The Second Circuit, in rejecting the district court's decision to grant a default judgment, noted that defendants retained counsel just one day after receiving the motion for default judgment. Id. The court held that willfulness "requires something more than mere negligence, such as egregious or deliberate conduct." Id. at 143 (citing New York v. Green, 420 F.3d at 108); see also Kuklachev v. Gelfman, No. 08 CV 2214, 2009 WL 497576, at *3 (E.D.N.Y. Feb. 26, 2009) (finding willfulness where defendants "took a calculated risk that the case would be resolved in their favor" where they pursued insurance coverage and filed a motion to dismiss plaintiff's claim in lieu of answering another defendant's cross claims).

The circumstances surrounding defendant 64-03's representation in this case appear to be fraught with miscommunication and other issues that affected the attorney-client relationship. Indeed, after Ms. Esagoff withdrew from her representation of defendant 64-03, noting her "difficulty in communicating" with defendants (see ECF No. 21), Mr. Tung filed a notice of appearance solely on behalf of the Chau defendants. (ECF No. 26). The relationship between Mr. Tung and the Chau defendants was also unsatisfactory as evidenced by Mr. Tung's withdrawal, Mr. Tung's difficulty in communicating his attempt to withdraw, and the dispute between Mr. Tung and his clients over the reason for the breakdown in communication. While Mr. Tung indicated that defendants had stopped communicating with him (see ECF No. 43), the

Chau defendants claimed that the miscommunication relating to his representation of defendant 64-03 was due to the attorney's negligence. (Defs.' Mot. at 4). Indeed, the Chau defendants now claim that they were never informed by Mr. Tung of the default that had been entered against 64-03. (Id.)

In Westmark Development Corp. v. Century Surety Co., the court denied a motion to vacate a default where the party argued that its default was due to its counsel's negligence. 199 F.R.D. 491, 493 (W.D.N.Y. 2001). The court stated that the party did not "provide any reasonable explanation for his failure to remain in contact with his prior counsel" and engage in the action. Id. at 496. Although this case is similar in that defendant 64-03 attributes the entry of default in part to its relationship with Mr. Tung, this case differs from Westmark because here, the individual Chau defendants have continued to appear and defend in this action. Although plaintiff argues that Mr. Chau is an experienced litigant in real estate matters and that the Chau defendants acted with a deliberate intent to delay matters (see Pl.'s Opp. at 11-12), allowing a default to be entered against the entity of which the Chaus were the sole owners, is not a particularly rational or savvy business decision. Instead, if the Chau defendants are to be believed, the absence of counsel retained to represent defendant 64-03 was due to miscommunications, or poor communication, between the defendants and their counsel solely regarding 64-03's representation. Indeed, after this Court Ordered defendants to obtain counsel, the Chau defendants obtained counsel on behalf of all three defendants. (See ECF No. 50). Furthermore, with the exception of Mr. Tung, the other attorneys who have appeared in this action on behalf of defendants both before and after Mr. Tung appeared on behalf of all of the defendants, adding further support to the claim of miscommunication and indicating that the default was not willful. See also Baykeeper, Inc. v. Shinnecock Baykeeper, Inc., No. 05 CV

4467, 2006 WL 436015, at *4 (E.D.N.Y. Feb. 22, 2006) (finding no willfulness where two of the six defendants defaulted, the remaining four defendants still had time to answer, and none of the defendants had counsel, noting that the defaulting defendants retained counsel after default).

Although defendant 64-03's conduct may have been negligent, as there were several instances in which the defendants' counsel was reminded of 64-03's obligation to obtain counsel or risk a default, this fails to rise to the level of willfulness that would warrant a default, particularly when considering the other factors of merit and prejudice as discussed infra.[9]

2. Meritorious Defense

In addition to analyzing the willfulness of 64-03's conduct, the Court must also consider whether 64-03 has shown that it has a meritorious defense and whether the plaintiff will suffer prejudice if the default is vacated. To demonstrate a sufficiently meritorious defense, "the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense." Aetna Life Ins. Co. v. Licht, 2004 WL 2389824, at *4; see Enron Oil Corp. v. Diakuhara, 10 F.3d at 98 (noting that the test is not "whether there is a likelihood that [the defense] will carry the day"). Although courts have described the meritorious defense factor as a "low threshold" to meet, Puddu v. 6D Glob. Techs., Inc., No. 15 CV 8061, 2020 WL 2833852, at *4 (S.D.N.Y. May 31, 2020); Eastern Sav. Bank, FSB v. Johnson, 2020 WL 1452461, at *2, the defendant still must show that there is some determination to be made by the factfinder. American Alliance Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996). While the proffered defense "need not be ultimately persuasive at this stage," American Alliance Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d at 61, defendant cannot

---

[9] Plaintiff makes reference to other actions in which Mr. Chau has appeared; these other actions are "not relevant to the consideration of the willfulness of [defendant 64-03's] default in the present action." In re FKF 3, LLC, 501 B.R. at 503 n.13.

simply assert in a conclusory fashion that it would prevail at trial.  <u>Aetna Life Ins. Co. v. Licht</u>, 2004 WL 2389824, at *4.

Defendant 64-03 has asserted that it has several meritorious defenses to the loan agreement, including fraud, duress, unconscionability, impossibility, impracticability, frustration of purpose, and *force majeure* due to the COVID-19 Pandemic.  (Def.'s Mot. at 5-6).  Additionally, 64-03 asserts that the loan's interest rates are usurious.  (<u>Id.</u>)  Notably, the Court need only determine if 64-03 has suggested at least one ground upon which the factfinder would need to make a determination.

As a threshold matter, although defendant 64-03 has proffered only defendant Mr. Chau's affidavit in support of its position that its defenses are meritorious, courts have held that an affidavit "based on first-hand knowledge . . . can satisfy the low threshold of adequacy necessary to establish a meritorious defense."  <u>Eastern Sav. Bank, FSB v. Johnson</u>, 2020 WL 1452461, at *3 (citing, as an example, <u>Johnson v. County of Erie</u>, No. 93 CV 0177E, 1994 WL 464063, at *1 (W.D.N.Y. Aug. 19, 1994)); <u>see</u> <u>First Nat. Bank of Arizona v. National Lending Corp.</u>, No. 06 CV 2768, 2011 WL 1315998, at *7 (E.D.N.Y. Mar. 14, 2011) (denying motion to vacate where defendant did not "file[] an answer, nor has she submitted an affidavit explaining her defense to the claims"), <u>report & recommendation adopted</u>, 2011 WL 1253659 (E.D.N.Y. Mar. 31, 2011); <u>see also</u> Wright & Miller, 10A Fed. Prac. & Proc. Civ. § 2697 (4th ed.) (noting that courts have accepted "allegations, conclusions and even denials in the moving party's motion or supporting affidavit," and others have "treated oral statements, affidavits or the court's own assumption as sufficient indication of the existence of a meritorious defense").

One of plaintiff's arguments in opposition to defendant 64-03's motion to vacate is that the defenses are preempted by the HOLA and therefore could not be meritorious because they

would not apply to this action.  The federal regulations associated with the HOLA provide examples where state law is preempted, including "[l]icensing, registration, filings, or reports," "[t]he terms of credit, including . . . adjustments to the interest rate," "[l]oan-related fees, including . . . prepayment penalties," "[p]rocessing, origination, servicing, sale or purchase of . . . mortgages," and "[u]sury and interest rate ceilings. . . ."  12 C.F.R. § 560.2(b); see also 12 U.S.C.A. § 1463(g) (providing that "state usury laws" are preempted).  However, the regulations expressly exempt from preemption state contract, real property, tort, and criminal laws if they "only incidentally affect the lending operations of Federal savings associations."  12 C.F.R. § 560.2(c).

In Midouin v. Downey Savings and Loan Association, F.A., this Court found that the plaintiff's claims under New York's "Truth in Lending Act," N.Y.G.B.L. § 349, were preempted because they alleged that the defendant "should have disclosed more clearly plaintiff's income and employment information," and should have "verif[ied] her monthly income and employment status" before issuing plaintiff a loan.  834 F. Supp. 2d 95, 114-15 (E.D.N.Y. 2011).  The Court emphasized that the plaintiff's claims did not "arise from breach of contract, but rather attempt[ed] to 'establish extra-contractual substantive requirements' for savings associations such as" the defendant.  Id. at 115 (citation omitted).  However, where claims "primarily sound in breach of contract, fraud, discrimination, or intentional torts," those claims are not preempted.  Matheson v. Ocwen Fed. Bank FSB, No. 05 CV 2747, 2008 WL 11413560, at *14 (E.D.N.Y. June 18, 2008); see McAnaney v. Astoria Fin. Corp., 665 F. Supp. 2d 132, 168 (E.D.N.Y. 2009) (holding common law claims stating that the plaintiffs were "not treated honestly and fairly as customers" were not preempted).

Thus, defendant 64-03's argument based on the New York state usury statute would clearly be preempted, although the Court does not pass on the proper interest rate in this case, as the Chau defendants continue to dispute preemption as applied to them as guarantors. However, 64-03's claims of fraud, duress, unconscionability, impossibility, impracticability, frustration of purpose, and *force majeure* would not be preempted. Thus, if just one of these defenses is potentially meritorious, this factor weighs in favor of vacating the default.

Under New York law, "[a] signatory to an agreement is bound by its terms unless there is a showing of fraud, duress or some other wrongful act on the part of any party to the contract." LG Cap. Funding, LLC v. MineralRite Corp., No. 16 CV 6158, 2017 WL 9250297, at *9 (E.D.N.Y. Dec. 1, 2017) (citation omitted). Indeed, "[f]raud in the inducement renders [a contractual] obligation voidable based upon facts occurring prior or subsequent to its execution." Willis v. Landamerica Onestop, Inc., No. 07 CV 3646, 2009 WL 2474624, at *2 (S.D.N.Y. Aug. 13, 2009) (quoting Dalessio v. Kessler, 6 A.D.3d 57, 61, 773 N.Y.S.2d 434, 436 (2d Dep't 2004)). Thus, if defendant 64-03's assertion that there was fraud associated with the signing of the Note are found to be true, 64-03's obligation under the Note would be voidable.

Additionally, as to 64-03's claim of unconscionability, "[w]here there is doubt . . . as to whether a contract is fraught with elements of unconscionability, there must be a hearing where the parties have an opportunity to present evidence with regard to the circumstances of the signing of the contract . . . ." Simar Holding Corp. v. GSC, 87 A.D.3d 688, 690, 928 N.Y.S.2d 592, 595 (2011) (citations omitted). Although "the determination of unconscionability is a matter of law for the court to decide," there should be a hearing here, particularly because this is not a case where "the significant facts germane to the unconscionability issue are essentially undisputed." Id. As noted previously, defendants have raised questions regarding defendant 64-

14

03's legal representation at the time that the Note was signed, as well as the circumstances surrounding the Note. Thus, at least some of 64-03's assertions of unconscionability, if found to be true, would operate as complete defenses to its obligations under the Note and necessitate additional factual development.

Lastly, to find at this stage of the litigation that defendant 64-03 has no meritorious defense in this action would also effectively decide the action as to the Chau defendants, who have been actively litigating this case since the beginning. Such a decision would essentially be a determination on the merits where neither the Chau defendants nor plaintiff has fully briefed the issues.[10] Accordingly, bearing in mind the preference of the courts to decide cases on their merits, Meehan v. Snow, 652 F.2d at 277, the Court finds that, if true, 64-03's asserted defenses of fraud and unconscionability may be "meritorious," although there may be other defenses that the Court did not analyze here. Since there is at least one ground upon which 64-03 may have suggested a meritorious defense, the Court proceeds consider to the final prong of the test.

3.  Undue Prejudice

The third factor that the Court must consider in determining whether to excuse a default is the prejudice to the plaintiff. Although defendant 64-03's failure to act diligently has certainly delayed the resolution of this case, plaintiff also argues that setting aside the notation of default against 64-03 has "likely resulted in the loss of evidence and created substantial difficulties of discovery," citing the Chau defendants' alleged failure to properly respond to discovery requests. (Pl.'s Opp. at 24); see Ward v. Ramkalawan, No. 11 CV 4295, 2013 WL 1149108, at *5 (E.D.N.Y. Feb. 11, 2013) (finding that "delay alone is not a sufficient basis for establishing

---

[10] Although the Chau defendants filed a letter "concerning their proposed motion for summary judgment" on April 8, 2021, the motion has not been fully briefed, nor has the District Court held a pre-motion conference on the motion for summary judgment. (See ECF No. 35).

prejudice"), <u>report & recommendation adopted</u>, 2013 WL 1149068 (E.D.N.Y. Mar. 19, 2013).

However, "no obstacles to litigation will result if the default is vacated." <u>Id.</u> That is especially true, here, where there has not been an inordinate delay; after the issues surrounding representation of the defendants were resolved, defendant 64-03 moved to set aside the default. Moreover, aside from plaintiff's unsupported allegation that evidence was "likely" lost, there has been no evidence presented to demonstrate that witnesses or evidence have been lost during the consideration of this motion. Finally, even if the default were not vacated, plaintiff and the Chau defendants would continue to litigate this action since the Chau defendants are not in default. Since discovery would likely be the same whether 64-03 is included in the case or not, and the defenses of all the defendants are intertwined, plaintiff will not be prejudiced by vacatur. <u>See</u> <u>Baykeeper, Inc. v. Shinnecock Baykeeper, Inc.</u>, 2006 WL 436015, at *6 (vacating default where, among other reasons, other defendants had not defaulted). Indeed, the court in <u>Willis v.</u> <u>Landamerica Onestop, Inc.</u> concluded that even where there would be duplicative discovery, such prejudice was "vastly outweighed by the prejudice to the [defendant] if [it] were deprived of the opportunity to defend" itself. 2009 WL 2474624, at *3. In this case, where the Chau defendants and 64-03 are likely to provide similar responses the discovery requests, there is little, if any, risk of duplicative discovery. As a result, the delays cited by plaintiff in this action, without more, are insufficient to find that any prejudice to plaintiff would outweigh the prejudice to defendant 64-03 if it was "deprived of the opportunity to defend" itself.

Having considered the three factors of the <u>Enron</u> test, the Court respectfully recommends that the default be set aside for good cause. <u>See, e.g.</u>, <u>Laffont v. Smarten Media LLC</u>, No. 19 CV 9456, 2020 WL 7232094, at *1 (S.D.N.Y. Sept. 15, 2020).

CONCLUSION

Accordingly, the undersigned respectfully recommends that the court set aside the default entered against defendant 64-03 and that plaintiff's motion for default judgment be denied at this time.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: May 12, 2022
       Brooklyn, New York

                                        *Cheryl L. Pollak*
                                        CHERYL L. POLLAK
                                        Chief United States Magistrate Judge
                                        Eastern District of New York

17