Alexander G. Malyshev
Jacob H. Nemon
CARTER LEDYARD & MILBURN LLP
28 Liberty Street, 41st Floor
New York, New York 10005
Tel.:   (212) 732-3200
Fax:    (212) 732-3232
Email: malyshev@clm.com / nemon@clm.com

*Attorneys for Plaintiff Axos Bank*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| AXOS BANK, a federally chartered savings bank, <br><br>              Plaintiff, <br><br>    v. <br><br> 64-03 REALTY LLC, WING FUNG CHAU, and WENDY CHAU, <br><br>              Defendants. | Case No. 1:20-cv-03549-RPK-CLP |

**PLAINTIFF AXOS BANK'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

11177522.9

## **TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT ...............................................................................................................2

    I.    The Chau Opp. Decl. Should Be Disregarded Because It Is False .................................... 2

    II.   Defendants Failed to Demonstrate that Nevada Law Should Not Apply in the Absence of Federal Preemption ...................................................................... 11

    III.  Defendants Failed to Raise a Triable Issue of Fact to Support an Unconscionability Defense ................................................................................. 13

    IV.  Defendants Failed to Substantiate any of Their Remaining Affirmative Defenses.......... 15

CONCLUSION.............................................................................................................16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ayala v. World Sav. Bank, FSB*,
  616 F. Supp. 2d 1007 (C.D. Cal. 2009) ...............................................................14

*Citibank (SD) N.A. v. Hansen*,
  28 Misc. 3d 195 (Nassau Co. Dist. Ct. Apr. 3, 2010) ............................................9

*CVSM, LLC v. Doe*,
  435 P.3d 659 (Nev. 2019) ...............................................................................13, 14

*Darkpulse, Inc. v. Firstfire Glob. Opportunities Fund, LLC*,
  2023 U.S. Dist. LEXIS 7874 (S.D.N.Y. Jan. 16, 2023).........................................12

*Doubleday & Co. v. Curtis*,
  763 F.2d 495 (2d Cir. 1985)....................................................................................7

*EMA Fin., LLC v. NFusz, Inc.*,
  444 F. Supp. 3d 530 (S.D.N.Y. 2020).............................................................11, 12

*Fleetwood Servs., LLC v. Ram Capital Funding, LLC*,
  2022 U.S. Dist. LEXIS 100837 (S.D.N.Y. June 6, 2022).......................................11

*FQ Men's Club v. Doe*,
  471 P.3d 753 (Nev. 2020) ......................................................................................13

*Hernandez v. NJK Contractors, Inc.*,
  2015 U.S. Dist. LEXIS 57568 (E.D.N.Y. May 1, 2015) ......................................2, 3

*Hicks v. Baines*,
  593 F.3d 159 (2d Cir. 2010)....................................................................................2

*Jackson v. Fed. Express*,
  766 F.3d 189 (2d Cir. 2014)...................................................................................15

*Jaramillo v. Weyerhaeuser Co.*,
  536 F.3d 140 (2d Cir. 2008)..................................................................................2, 9

*Madden v. Midland Funding, LLC*,
  786 F.3d 246 (2d Cir. 2015)....................................................................................9

*Martinez v. Wells Fargo Home Mortg., Inc.*,
  598 F.3d 549 (9th Cir. 2010) .................................................................................15

ii

*McCauley v. Home Loan Inv. Bank*,
    710 F.3d 551 (4th Cir. 2013) ........................................................................14

*Pac. Capital Bank, N.A. v. Connecticut*,
    542 F.3d 341 (2d Cir. 2008).........................................................................11

*Parallax Health Scis., Inc. v. Ema Fin., LLC*,
    2022 U.S. Dist. LEXIS 47135 (S.D.N.Y. Feb. 24, 2022)......................................12

*Scott v. Almenas*,
    143 F.3d 105 (2d Cir. 1998)..........................................................................2

*Sims v. Opportunity Fin., LLC*,
    2021 U.S. Dist. LEXIS 71360 (N.D. Cal. Apr. 13, 2021) ....................................11

*U.S. Home Corp. v. Ballesteros Tr.*,
    415 P.3d 32 (Nev. 2018) ..............................................................................14

*U.S. v. Moseley*,
    980 F.3d 9 (2d Cir. 2020)............................................................................12

*Wachovia Bank, Nat'l Ass'n v. Schmidt*,
    546 U.S. 303 (2006) ....................................................................................10

*Weinstock v. Columbia Univ.*,
    224 F.3d 33 (2d Cir. 2000)............................................................................2

*Weiss v. La Suisse, Societe D'Assurances Sur La Vie*,
    293 F. Supp. 2d 397 (S.D.N.Y. 2003)............................................................2

## Other Authorities

12 U.S.C. § 85 ........................................................................................10

Cal. Const., Art. XV § 1............................................................................11

Fed. R. Civ. P. 56(c)(1).............................................................................2

Ltr. From John E. Bowman, Office of Thrift Superv., Treas. Dept., OPERATING
    SUBSIDIARIES AND MOST FAVORED LENDER DOCTRINE (July 20, 2006),
    *available at* https://www.occ.gov/static/ots/legal-opinions/ots-lo-07-20-
    2006.pdf ..................................................................................................10

## PRELIMINARY STATEMENT

The Court should grant Plaintiffs' motion for summary judgment ("Motion") and disregard Defendants' opposition arguments.[1]  As an initial matter, the Declaration of Wing Fung Chau in Opposition to Plaintiff's Motion for Summary Judgment dated April 13, 2023 ("Chau Opp. Decl."), is built upon misrepresentations that contradict Mr. Chau's deposition testimony.  It should be disregarded under the doctrine *falsus in uno, falsus in omnibus* in favor of Mr. Chau's deposition admissions, which actually demonstrate that Plaintiff is entitled to summary judgment.[2]

Furthermore, neither the Chau Opp. Decl., Declaration of William X. Zou dated April 13, 2023 ("Zou Decl."), nor Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment dated April 13, 2023 ("MOL Opp."), raise triable issues of fact. To the contrary, Defendants ignore the evidentiary record including the documentary evidence and Mr. Chau's and Ms. Chau's deposition testimonies.  There is no dispute that (i) 64-03 entered into, and the Individual Defendants guaranteed, the loan with Axos, (ii) Axos is a federal savings association which issued the loan from its Nevada office, (iii) under HOLA, state usury laws are preempted, and (iv) there is no maximum rate of interest under Nevada law.  Indeed, in the May 12, 2022, Report & Recommendation ("R&R"), adopted by this Court on May 30, 2022, Magistrate Judge Pollak recognized that "defendant 64-03's argument based on the New York state usury statute would clearly be preempted" as a result.  DN 56, at 14.  Moreover, the Individual Defendants, who are indisputably sophisticated parties, admitted to having read, or had the opportunity to read, the loan documents before executing them and are conclusively bound by their terms.  Defendants otherwise fail to lay bare evidentiary proof to support their other affirmative defenses.

---

[1] Capitalized terms not defined herein have the same definition as in Plaintiff Axos Bank's Memorandum of Law in Support of its Motion for Summary Judgment dated February 17, 2023 ("MOL Supp.").

[2] No affidavit was submitted by Defendant Ms. Chau, who provided deposition testimony.  Malyshev Aff., Exh. 6.

1

**ARGUMENT**

In opposition to the Motion, Defendants as non-moving parties, "must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citation omitted). Defendants must cite to "particular parts of materials in the record" or show "that the materials cited [by Plaintiff] do not establish the absence … of a genuine dispute" as to any material fact. Fed. R. Civ. P. 56(c)(1).  Defendants "may not rely on conclusory allegations or unsubstantiated speculation" (*Scott v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)), as "unsupported allegations do not create a material issue of fact." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted); *accord Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010).  Rather, Defendants "must lay bare [their] proof in evidentiary form and raise an issue of fact sufficient to send to the jury." *Weiss v. La Suisse, Societe D'Assurances Sur La Vie*, 293 F. Supp. 2d 397, 408 (S.D.N.Y. 2003) (quotation marks and citations omitted).  Defendants failed to meet this shifted burden.

I.    **The Chau Opp. Decl. Should Be Disregarded Because It Is False**

Under the maxim *falsus in uno falsus in omnibus*, the Court should disregard the Chau Opp. Decl., which is full of willful lies contradicting Mr. Chau's deposition testimony, and consider only the admissions in Mr. Chau's deposition testimony rather than his lawyer-drafted declarations.  "The doctrine of *falsus in uno* allows that if a fact finder finds that a witness willfully falsely testified to a material fact, a fact finder is privileged to reject all his testimony, or elect to believe part of it and accept that part of it which appealed to a fact finder's reason, or which was corroborated by other credible evidence and reject the rest." *Hernandez v. NJK Contractors, Inc.*, 2015 U.S. Dist. LEXIS 57568, at *91-92 (E.D.N.Y. May 1, 2015) (internal citations, quotation marks and alterations omitted).  Given apparent misrepresentations in written sworn statements,

2

that court placed "greater weight on Plaintiffs' sworn, in-court testimony than their interrogatory answers, affidavits, and declarations." *Id.* at *94. The lies in the Chau Opp. Decl. are particularly egregious here, where the Rule 56.1 Statement submitted in support of the Motion carefully demonstrated how Mr. Chau's deposition testimony contradicted various false assertions made in his earlier declarations, but rather than attempting to reconcile or withdraw any part of his conflicting testimonies, Defendants doubled-down on the falsehoods in Mr. Chau's lawyer-drafted declarations.[3]

Although Plaintiff notes here certain lies in the Chau Opp. Decl., the Court should nonetheless construe admissions against interest by Mr. Chau against Defendants. Indeed, the Chau Opp. Decl. contains critical admissions that he read the Note and other loan documents at the time of the closing, understood the material terms of the loan (including the interest rate), communicated at the time with WBL's representative Ms. Liu, and, despite his alleged dissatisfaction with the interest rate, he (and his daughter Ms. Chau) executed the loan documents. Chau Opp. Decl. ¶ 13 ("I did not know the interests rate was so high until when she asked me to sign. I confronted with her that such interest rate was not as cheap as she told me…. Even though I did not understand the contents of the loan documents, I signed them without legal representation.") (typos in original). While these facts contradict Mr. Chau's deposition testimony, they actually militate in favor of granting summary judgment to Plaintiff. In other words, Defendants' claims that they did not know Axos was the lender (*id.* ¶¶ 18-19), the actual interest rate (*id.* ¶ 13), the presence of a prepayment premium term in the loan documents (*id.* ¶¶ 21, 24) or the applicability of Nevada law (*id.* ¶ 19), all fail since Mr. Chau admits Defendants actually

---

[3] The **72**-paragraph Defendants' Counter-Statement and Objection to Plaintiff's Rule 56.1 Statement dated April 13, 2023 was not tailored to address the allegations in the **75**-paragraph Statement, but was instead addressed to an earlier draft statement of material facts submitted together with Plaintiff's pre-motion letter.

3

11177522.9

reviewed the material terms of the loan, which are clearly and prominently set forth in the written loan documents. *See* Pardes Decl., Exhs. B (Note) at ¶¶ 1, 2, 4, and 16(c); H (copies of unsigned draft loan documents provided to Defendants in advance of closing); I (prepayment disclosure); and M (Business Loan Summary).

Defendants' allegations that Mr. Chau objected in-person at the closing to Ms. Liu, whom he claims "simply brought me loan documents and asked me to sign" (*id.* ¶ 11), or "did not have a chance to review the loan documents prior to closing" (*id.* ¶ 12), are demonstrable falsehoods meant to manufacture fact issues. In deposition testimony, Mr. Chau said only a "secretary" (who was actually a notary) appeared at the closing on December 20, 2019. Andy Tr. 121:19-25. He never claimed Ms. Liu appeared in person; to the contrary, Ms. Liu emailed him prior to the closing, asking him to "[p]lease email completed and executed loan document to me and FedEx original executed loan document to my attention …," indicating she did not attend in person. Pardes Decl., Exh. G. Furthermore, Mr. Chau did not dispute the draft loan documents bearing Defendants' bates numbers D0140-D0166 (Pardes Decl., Exh. H), were provided to Defendants by email in advance of closing, with a full opportunity to review. Andy Tr. 136:11-17. Mr. Chau further admitted he actually had an opportunity to read the documents prior to executing them. *Id.* at 125:4-6 ("Q. But you had time to read it before you signed it, correct? A. I could, yes.").

Contrary to his present claim that he confronted Ms. Liu about the interest rate, he testified at deposition that he did not bother reading the Note or seek any explanation about the interest rates. *Id.* 136:24-137:7 ("Q. When you signed this document at the closing, did you agree to the interest rates specified in Paragraph 2? A. To agree with it -- *well, at the time nobody explained that to me.* I don't know how to calculate the interest rate based on per day.") and 138:2-9 ("Q. But if you had put those numbers in Paragraph 2 into your calculator and multiplied it by 365, you

4

could have figured out what the annual interest rate is, correct?  A. If it is by multiplying, then yes, I could have done it. *But I did not do so.*") (emphases supplied).  Moreover, contrary to his present claim that "[t]here is no prepayment [premium] here" (Chau Opp. Decl. ¶ 24), Mr. Chau admitted at deposition that there was a clear prepayment premium term at paragraph 4 of the Note.  Andy Tr. 138:10-21 ("Q. Okay.  I'm gonna go down to Paragraph 4.  Paragraph is called 'Voluntary Prepayment and Prepayment Premium,' do you see that?  A. At the time nobody explained it to me.  If someone would explained to me like what you did you today very clearly, then I would not have signed the document.  Q. But you did sign it, correct?  A. I signed it under the condition that I wasn't clear about it.").

Mr. Chau makes further false assertions that "[a]t that time, 64-03 was experiencing financial hardship and needed funds, I had no choice but to sign the loan documents."  Chau Opp. Decl. ¶ 13.[4]  However, at deposition, Mr. Chau stated unequivocally that Defendant 64-03 had no financial difficulties and was not coerced into taking a loan. Andy Tr. 111:15-18 (confirming "64-03 had enough money at the time to cover all of its expenses") and 114:7-10 ("Nobody forced me" to take the loan. ).  Indeed, 64-03 was making all of its payments to Kearny Bank, the senior lender at the time.  *Id.* 109:24-110:4 ("Q. Was 64-03 making all of its payments to its senior lender?  A. Making payments, well at the time we were collecting rents we did make payments.").

---

[4] In Chau Opp. Decl. ¶ 4, Mr. Chau claims "[a]t the brink of Covid-19 in December 2019, knowing of that 64-03 was experiencing cash flow financial hardships, Ms. Liu approached me and represented to me that she can loan 64-03 funds at competitive rate and quick which I was enticed."  Of course, there was no exploitation or duress here.  Not only was December 2019 four months before the Covid-19 pandemic caused shutdowns (which Chau Opp. Decl. ¶ 22 calls "unforeseeable" and "unprecedented"), but the negotiations between 64-03 began at least as early as November 26, 2019 (*see* Pardes Decl., Exh. C) and continued over more than three weeks through December 20, 2019, in which there were email and in-person negotiations.  Andy Tr. 107:21 ("Q.  Do you think it took more than a few weeks?  A. Yes, I can put it that way.").

5

Mr. Chau admitted he was sophisticated enough to request "that I wanted to use a lawyer of my own choice" for the review of documents and for the closing, but nonetheless conceded to Mr. Chen as his lawyer for the closing.  Chau Opp. Decl. ¶ 9.  Despite claiming to have been dissatisfied that Mr. Chen failed to appear at the closing of the Note and to have not received amounts allegedly due thereunder at the closing (*id.* ¶¶ 10, 14), Mr. Chau does not dispute that he continued using Mr. Chen as his lawyer in February 2020 for another loan transaction with WBL.  *See* Pardes Decl., Exh. Q.  In fact, in opposition, Mr. Chau does not provide any explanation why, if he believed as of December 20, 2019 that he had actually been defrauded by Ms. Liu and WBL with respect to the instant Note, he solicited two additional loans from them in February and May 2020 *and used Mr. Chen as his lawyer*.  *See* Pardes Decl., Exhs. P, Q, R.

Finally, Mr. Chau continues to insist that 64-03 "only received about $1,600,000.00 from the $2,000,000.00 loan, there were excessive charges and points, including 2% origination fees, over $110,000.00 hold back for escrows which I do not even know of its purpose."  Chau Opp. Aff. ¶ 14.  He fails to address the evidence submitted in the Motion, including the Business Loan Summary and two escrow agreements, which demonstrated why there was a disbursement amount of $1,685,479.96 after total processing fees of $105,598.00 and Adjustments of $208,922.04.  Pardes Decl. ¶¶ 34-37, Exhs. M, N, O.  Nor does he attempt to address the allegations in the Motion that (i) the amount of the first escrow, $85,000, is still being held in escrow and is credited to 64-03 in the total amount sought, and (ii) the amount of the second escrow, $110,465.75, was actually utilized to make the first twelve weekly payments under the Note and has been properly applied to 64-03's account.  Pardes Decl. ¶¶ 36-37, Exhs. X and Z.  Defendants are simply trying to falsely create an issue of fact without addressing the clear evidence in the record.  Critically, Defendants

6

do not even provide any argument in the MOL Opp. as to how or why these manufactured issues should defeat summary judgment.

Therefore, the Court should disregard the Chau Opp. Decl. and grant summary judgment to Plaintiff based upon the documentary evidence and admissions made in deposition testimony.

Defendants Cannot Defeat Federal Preemption with Their "True Lender" Defense

The Court should reject Defendants' argument that federal preemption of New York usury laws is inapplicable based upon their unpleaded defense that Plaintiff Axos is not the "true lender." Initially, this defense is barred simply because "a party's failure to plead an affirmative defense bars its invocation at later stages of the litigation." *Doubleday & Co. v. Curtis*, 763 F.2d 495, 503 (2d Cir. 1985).

Even if the defense were not waived, each of the loan documents executed by Defendants indisputably list Axos—a federal savings association—as the lender. *See, e.g.,* Pardes Decl., Exhs. B (Note) at 1 ("Axos Bank" logo) and ¶¶ 1 ("promis[ing] to pay to the order of Axos Bank, its successors and/or assigns ('Lender') at its offices located at 9205 West Russel Road, Suite 400, Las Vegas, NV 89148 …"), 16(c) ("Lender is an FDIC insured, federal savings association and this Loan Agreement is approved, and the proceeds are disbursed, by Lender in Nevada."); I (Prepayment Disclosure with "Axos Bank" logo); J (Business Loan Purpose Affidavit bearing "Axos Bank" logo); K (Guaranty with "Axos Bank" logo stating it is "to induce Axos Bank, its successors and/or assigns ('Lender') at its offices located at 9205 West Russel Road, Suite 400, Las Vegas, NV 89148 …"); L (Mortgage stating it is with "Axos Bank, Mortgagee"); M (Business Loan Summary with "Axos Bank" logo identifying the "Lender" as "Axos Bank, 9205 West Russel Road, Suite 400, Las Vegas, NV 89148"). In fact, two days before the final closing and funding of the loan, Mr. Chau received a package of loan documents through DocuSign, which he executed, which clearly showed Axos was the lender. *See* Reply Declaration of John Murphy

7

("Murphy Decl."), Exh. A.  No loan documents indicated WBL was the lender.  Contrary to Defendants' conclusory arguments, Axos is clearly the lender and WBL merely arranged the loan for 64-03 through Axos.

Indeed, Defendants do not produce any admissible, case-specific evidence concerning this loan to contradict this fact.  Defendants do not submit copies of their bank statements to show that the proceeds were disbursed to 64-03 other than through Axos or communications with WBL in which it presented itself as the lender (as opposed to servicer or service provider to Axos during origination.  *But see* Murphy Decl., Exh. A (Servicing Disclosure Notice, stating WBL "will be servicing your loan and will have the right to collect payments on behalf of the Lender" identified as "Axos Bank").  And, because they never pleaded this "true lender" defense, Defendants never served Plaintiff with discovery demands on this issue during the nearly two years of discovery in this action (which is now closed).  They cannot simply manufacture this issue out of whole cloth in opposing summary judgment.

The only purported "evidence" Defendants submit is a document—never produced by Defendants during discovery[5]—entitled "Testimony of Lauren Saunders National Consumer Law Center on behalf of its low income clients Before the House Financial Services Committee, etc." Zou Aff., Exh. 2.  However, not only does this written testimony not relate to the specific Note at issue, it is inadmissible in a court of law inasmuch as the document does not indicate anywhere that it was submitted under oath or penalty of perjury, is not notarized, and relies upon hearsay, speculation and other claims for which Ms. Saunders does not purport to have any personal knowledge.  Ms. Saunders has not been offered as either a notice or expert witness in this action,

---

[5] The Court entered repeated discovery orders requiring production of all documents by Defendants—nearly to the point of sanctioning them on some occasions—yet this document was never produced.  *See* Dkt. Nos. 67, 74, Minute Entries dated November 21, 2022 and June 17, 2022.

11177522.9

has not been qualified as an expert herein, and Plaintiff has not been afforded an opportunity to depose Ms. Saunders.  This falls woefully short of Defendants' requirement to come forward with evidence in admissible form.  *Jaramillo v.* 536 F.3d at 145.  Defendants' argument concerning *Madden v. Midland Funding, LLC*, 786 F.3d 246 (2d Cir. 2015), is irrelevant since Plaintiff is indisputably a federal savings association, and is the lender of record under the Note, not an assignee.  *Madden* affirmed that with respect to federally-chartered banks, "there is no such thing as a state-law claim of usury" since the federal laws "completely preempt[] analogous state-law usury claims."  *Id.* at 250.  However, it left open the question whether a non-bank assignee of a federally-chartered bank loan is still protected from state law usury claims under the federal preemption doctrine.  That is clearly not an issue here because there was no assignment of the subject loan from Axos and Axos is the Plaintiff.

Defendants also cite the state district court decision, *Citibank (SD) N.A. v. Hansen*, 28 Misc. 3d 195, 196 (Nassau Co. Dist. Ct. Apr. 3, 2010), and argue Plaintiff has not demonstrated at least one nonministerial act occurred in Nevada for the federal preemption doctrine to apply.  But that case involved Citibank, which has offices nationwide.  Citibank contended that the law of South Dakota, its "home state," should apply, rather than the law of New York.  The court ruled:

> [A]n *interstate* national bank (such as Citibank [SD] N.A.) may charge interest and penalties permitted by its "home state" (e.g. South Dakota) only if at least one significant nonministerial function associated with the account actually took place in the bank's "home state." … Although *such a structuring of bank functions may be done 'deliberately' in order to invoke the more favorable usury laws of certain states*, the location of nonministerial functions must actually be shifted to the bank's home office to take advantage of the exception.

*Hansen*, 28 Misc. 3d at 196 (emphases supplied).  Citibank had offices in both New York and South Dakota (as well as other states) and the question in that case was whether in invoking South

9

Dakota law, Citibank had performed any nonministerial function there (or whether its other offices carried out the nonministerial lending functions).

In contrast, there is evidence submitted here that nonministerial functions of Plaintiff related to this Note occurred in Nevada. Note ¶ 16(c) states explicitly "this Loan Agreement is approved, and the proceeds are disbursed, by Lender in Nevada" and the uncontradicted testimony confirms "[t]he loan at issue was originated out of Axos's Nevada branch, located at 9205 West Russell Road, Suite 400, Las Vegas, NV 89148." Pardes Decl. ¶ 6. Moreover, there is no evidence (or even an allegation) of any conduct *of Axos* in New York pertaining to the subject loan. Unlike Citibank, Axos only has bank branches in Nevada and California, as indicated on the FDIC website. Pardes Decl., Exh. A.

Finally, Defendants argue "Plaintiff has even failed to show where is its home state." MOL Opp. at 7. This is false. Pardes Decl. ¶¶ 5-6 set forth that Plaintiff's home state is California while the loan was issued from its Nevada office. The question for federal preemption is not the location of Axos's home state, but which of its offices made the loan in question. *See* Ltr. From John E. Bowman, Off. of Thrift Superv., Treas. Dept., OPERATING SUBSIDIARIES AND MOST FAVORED LENDER DOCTRINE (July 20, 2006) at 5, *available at* https://www.occ.gov/static/ots/legal-opinions/ots-lo-07-20-2006.pdf ("If an association has a branch office in a state other than its home office state, the association also has the option of using and exporting the most favored lender interest rates of the branch office state when making loans that are booked out of the branch state.").[6] Since the evidence provides the Nevada office approved and disbursed the loan proceeds, there is no basis for the Court to determine federal preemption or Nevada law should not apply.

---

[6] *See also Wachovia Bank, Nat'l Ass'n v. Schmidt*, 546 U.S. 303, 313-14 (2006) (The term "'located' apparently refers to or includes branch offices.") (referencing 12 U.S.C. § 85, the preemption provision of the NBA, which provides

10

II.   **Defendants Failed to Demonstrate that Nevada Law Should Not Apply in the Absence of Federal Preemption**

Defendants argue that, to the extent the Court relies not upon federal preemption but choice-of-law principles, it should disregard the contractual choice-of-law provision designating Nevada law.  MOL Opp. at 9-11.  Defendants ignore recent district court cases from this circuit that repeatedly enforced Nevada law for loans to corporations.  "New York courts may refuse to enforce a choice-of-law clause only where (1) the parties' choice has no reasonable basis or (2) application of the chosen law would violate a fundamental public policy of another jurisdiction with materially greater interests in the dispute." *EMA Fin., LLC v. NFusz, Inc.*, 444 F. Supp. 3d 530, 540 (S.D.N.Y. 2020) (enforcing Nevada choice of law provision in the face of usury challenge); *accord Fleetwood Servs., LLC v. Ram Capital Funding, LLC*, 2022 U.S. Dist. LEXIS 100837, at *51 (S.D.N.Y. June 6, 2022) ("Assuming that the usury claim falls within the scope of the choice-of-law provision, the parties' choice of law is respected and will be enforced unless the chosen law bears no reasonable relationship to the transaction or the parties or if enforcement of it would be intolerable for the court.").

As to the first prong, "[t]he relevant inquiry is not[] whether the selected state is the state with the greatest number of connections to the parties or the transaction; rather, it is whether the relationship to the selected state is 'reasonable.'" *NFusz*, 444 F. Supp. 3d at 540-541.  Here, there

---

that national banks may take "interest at the rate allowed by the laws of the State, Territory, or District *where the bank is located* …") (emphasis supplied); *Pac. Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 352 (2d Cir. 2008) ("a national bank is 'located' for purposes of § 85 in the State named in its organization certificate, *or in a state in which it has its main or branch offices*") (emphases supplied).

Even if California law applied, Cal. Const., Art. XV § 1 exempts from its state usury law "any bank created and operating under and pursuant to any laws of this State or of the United States of America."  Furthermore, under California law, a court must "look only to the face of a transaction when assessing whether it falls under a statutory exemption from the usury prohibition and not look to the intent of the parties."  *Sims v. Opportunity Fin., LLC*, 2021 U.S. Dist. LEXIS 71360, at *9 (N.D. Cal. Apr. 13, 2021) (citation omitted).

11

is a clear nexus between the transaction and Nevada: as evidenced above, it is the undisputed state out of which the subject loan was originated.  It is also the state where one of Axos's two branches are located.  *See* Pardes Decl., Exh. A.

As to the second prong, district courts in the Second Circuit since *U.S. v. Moseley*, 980 F.3d 9 (2d Cir. 2020), have repeatedly found no violation of New York public policy from choice-of-law provisions in corporate loans designating states with no maximum rates of interest.  *Moseley* found a payday lender to individual New York borrowers was guilty of usury violations.  The Second Circuit opined, "we agree with these decisions that when courts determine whether New York would enforce choice-of-law provisions set out in a contract, *corporations conducting their business transactions should be treated differently from individual consumers* seeking personal credit."  *Moseley*, 980 F.3d at 22 (emphasis supplied). That year, the *NFusz* court opined in enforcing a Nevada loan that "[c]ourts in this District have thus been reluctant to invalidate choice-of-law clauses in commercial contracts in order to enforce New York's usury laws."  *NFusz*, 444 F. Supp. 3d at 542 (citing cases).  In the following years, at least two district courts followed suit by enforcing Nevada loans to corporations and determined New York usury laws were inapplicable.  *Darkpulse, Inc. v. Firstfire Glob. Opportunities Fund, LLC*, 2023 U.S. Dist. LEXIS 7874, at *30 (S.D.N.Y. Jan. 16, 2023); *Parallax Health Scis., Inc. v. Ema Fin., LLC*, 2022 U.S. Dist. LEXIS 47135, at *31 (S.D.N.Y. Feb. 24, 2022). Notably, each of the cases cited by Defendants to argue New York's public policy against usury overrides a choice-of-law provision (MOL Opp. at 10) pre-dates the Second Circuit's decision in *Moseley*.  Therefore, even without federal preemption, the Court should enforce the Nevada choice-of-law provision in the Note and dismiss Defendants' usury defenses.

**III.     Defendants Failed to Raise a Triable Issue of Fact to Support an Unconscionability Defense**

The Court should reject Defendants' arguments that the Note was unconscionable based on their conclusory claims that Plaintiff did not explain the contents of the Note to them or allow them to obtain independent counsel and of excessive interest or fees.  MOL Opp. at 11-13.

Defendants failed to establish *both* procedural and substantive unconscionability, as required under applicable Nevada law.  *CVSM, LLC v. Doe*, 435 P.3d 659, at *2-3 (Nev. 2019).  For procedural unconscionability, Defendants have not submitted evidence that they did "not have the opportunity to agree to the contract term either because (1) the contract is an adhesion contract, or because (2) the terms are not readily ascertainable upon a review of the contract."  *Id.* at *4; *see FQ Men's Club v. Doe*, 471 P.3d 753, at *4-5 (Nev. 2020) ("Procedural unconscionability also considers the manner in which the contract or the disputed clause was presented and negotiated, as well as whether the drafting party misrepresented the nature or effect of the contract.").  The opposite was revealed through Mr. Chau's deposition testimony.

First, Mr. Chau admitted he had ample opportunity to review the contract without time-pressure (Andy Tr. 125:4-6 ("Q.  But you had time to read it before you signed it, correct?  A.  I could, yes.")), executed the loan documents without coercion (*id.* 114:7-10 ("[n]obody forced me")), knew he had the right to have counsel represent him at a closing (*id.* 121:5-10) and had access to multiple attorneys at that time who he could have called (*id.* 123:13-124:5).  Defendants do not identify how Plaintiff *prevented* Defendants from having an attorney of their choice review the documents.  Defendants were not under financial duress to close on this loan, knew 64-03 could have shopped around for a loan because "we had value in [the Building]," but did not do so because it was seeking a second mortgage.  *Id.* 112:6-18, 114:6.  As a matter of law, Defendants cannot blame Plaintiff for not explaining the Note terms to them because it is not the "duty of a

13

party to explain the legal effects of every provision of a contract.  No law requires that parties dealing at arm's length have a duty to explain to each other the terms of a written contract.… [A] party who does not read a contract before signing it can still be bound by its terms." *CVSM*, 435 P.3d 659, at *3-4 (citations and quotation marks omitted).

Second, Mr. Chau admitted that the material terms of the Note, including the interest rate and the prepayment premium, were readily ascertainable since they were prominently displayed on the first page of the Note as well as in the Business Loan Summary in a manner that was not misleading and was capable of easy understanding for a real estate professional like himself.  *See* Andy Tr. 135:18-137:7, 138:2-9, 139:4-18, 140:6-19.  However, Mr. Chau never bothered to read these documents prior to signing them, even though he knew he had an opportunity to do so.  *Id.* 125:4-17, 131:23-132:2, 139:19-25.  At worst, Mr. Chau was willfully negligent in executing loan documents he knew he should have read in advance, but there was no procedural unconscionability on Plaintiff's or WBL's part that prevented Defendants from making any meaningful choice.

Since procedural unconscionability has not been demonstrated, the Court need "not address substantive unconscionability, since both must exist to invalidate a contract as unconscionable." *U.S. Home Corp. v. Ballesteros Tr.*, 415 P.3d 32, 42 (Nev. 2018).  However, even if the Court reached this question, it is preempted.  *See Ayala v. World Sav. Bank, FSB*, 616 F. Supp. 2d 1007, 1015-16 (C.D. Cal. 2009) (HOLA preempts claim that centered on the unconscionability of extending notes defendants knew plaintiffs could not make payments on, as the claim purported to impose requirements regarding proper terms of credit).  Multiple federal appellate cases have rejected similar unconscionability arguments against federally chartered banks.  *See McCauley v. Home Loan Inv. Bank*, 710 F.3d 551, 556 n.4 (4th Cir. 2013) ("to the extent Appellant argues that the 'exploding' ARM was substantively unconscionable, such a claim is preempted because it

14

attempts to regulate a bank's terms of credit, including adjustments to the interest rate"); *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 555 (9th Cir. 2010) (dismissing claim that certain bank fees were rates "too high" under state consumer protection statute because "state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers are preempted").

Mr. Chau was undisputedly a sophisticated real estate professional who negotiated interest rates for a second-position loan over the course of multiple weeks and freely entered into a contract that had acceptable rates and repayment terms.  If there were better loan terms elsewhere, he could have shopped around.  If any terms were unacceptable, he could have pushed back.  There is simply no evidence of either procedural and substantive unconscionability.

## IV.   Defendants Failed to Substantiate any of Their Remaining Affirmative Defenses

Although Defendants acknowledge that the Motion seeks summary judgment and dismissal of their affirmative defenses for fraudulent inducement, setoff, impossibility and lack of notice (MOL Opp. at 5), their opposition papers do not address let alone oppose those parts of the Motion (*see* MOL Supp. at 10-15, 18-22) or the part of the Motion that seeks dismissal of their remaining affirmative defenses as conclusory (*id.* at 22-23).  Therefore, each of those affirmative defenses should be dismissed on the ground that those defenses are abandoned.  *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014) ("a partial response arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims").

**CONCLUSION**

WHEREFORE, the Court should grant the Motion for summary judgment in favor of Plaintiff, dismiss Defendants' affirmative defenses and Counterclaim, and grant Plaintiff such other and further relief as the Court deems just and proper.

Dated: April 27, 2023

CARTER LEDYARD & MILBURN LLP

By:      /s/ Alexander G. Malyshev
      Alexander G. Malyshev
      Jacob H. Nemon
28 Liberty Street, 41st Floor
New York, New York 10005
Tel.:   (212) 732-3200
Fax:   (212) 732-3232
Email: malyshev@clm.com / nemon@clm.com

*Attorneys for Plaintiff Axos Bank*

16

11177522.9