UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x

AXOS BANK,

                Plaintiff,

      v.

64-03 REALTY LLC, WING FUNG
CHAU, and WENDY CHAU,

                Defendants.

-----------------------------------------------------x

**MEMORANDUM AND ORDER**
20-CV-3549 (RPK) (CLP)

RACHEL P. KOVNER, United States District Judge:

      Plaintiff Axos Bank brings this action seeking to enforce a promissory note against defendant 64-03 Realty LLC and a guaranty against defendants Wing Fung Chau and Wendy Chau.  Before the Court are non-party Randall Funding LLC's motion to intervene and Axos Bank's motion for summary judgment against Wing Fung Chau and Wendy Chau.[1]  For the reasons set forth below, Randall Funding's motion to intervene is denied, and Axos Bank's motion for summary judgment is granted as to liability but not as to the amount due.

## BACKGROUND

### I.   Factual Background

      The following facts—taken from the parties' Rule 56.1 statements, depositions, and evidentiary filings—are uncontradicted by other evidence unless noted.  Wing Fung Chau and Wendy Chau deny several facts set forth in Axos Bank's Rule 56.1 statement on the basis that the relevant "information was never disclosed to [them]," *see, e.g.*, Defs.' Rule 56.1 Counterstatement

---

[1] Axos Bank has also sought summary judgment against defendant 64-03 Realty LLC.  *See* Pl.'s Mem. of L. in Supp. of Mot. for Summ. J. ("Pl.'s MSJ") (Dkt. #84).  But because 64-03 Realty has since filed for bankruptcy, *see In re 64-03 Realty LLC*, No. 24-BK-40820 (NHL) (Bankr. E.D.N.Y.), proceedings against that defendant are automatically stayed pending the conclusion of the bankruptcy proceedings.  *See* 11 U.S.C. § 362(a).

("Defs.' Statement") ¶ 1 (Dkt. #85-1), that Axos Bank's recitation of the facts "is argumentative and conclusive," *see, e.g.*, *id.* ¶ 9, or that they lack "enough information or documents to deny or admit" them, *see, e.g.*, *id.* ¶ 55.  But because Wing Fung Chau and Wendy Chau do not "properly controvert[]" those facts "with a specific and relevant citation to evidence in the record," they are admitted "to the extent that they are adequately supported with record evidence."  *Zaniewska v. City of New York*, No. 11-CV-2446 (RRM) (VVP), 2013 WL 3990751, at *1 n.3 (E.D.N.Y. Aug. 5, 2013); *see Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.") (citing Local R. 56.1(c)).

Axos Bank is a federal savings association located in California with a branch in Nevada. Pl.'s Rule 56.1 Statement ("Pl.'s Statement") ¶¶ 1–2 (Dkt. #84-1).  64-03 Realty is a company based in New York whose sole member is Wing Fung Chau.  Defs.' Statement ¶ 3.  Wendy Chau is Wing Fung Chau's adult daughter.  *Id.* ¶ 15.

In November 2019, Wing Fung Chau sought a $2 million business loan from World Business Lenders, LLC, Pl.'s Statement ¶ 21, a company based in New Jersey, Defs.' Statement ¶ 2.  World Business Lenders "either lend[s] money on its own or arrange[s] for business loans to be made by Axos, which are then serviced by" World Business Lenders.  Pl.'s Statement ¶ 21. While negotiating the terms of the loan, Wing Fung Chau "primarily dealt with" a representative of World Business Lenders.  Defs.' Statement ¶ 22.

During negotiations with World Business Lenders, Wing Fung Chau agreed to secure the loan with a residential building owned by 64-03 Realty.  *See* Pl.'s Statement ¶ 4, 21.  Wendy Chau owned a condominium unit inside the building.  *Id.* ¶ 16.  According to Axos Bank, Wing Fung Chau "committed to" World Business Lenders "that he would get [Wendy Chau] to provide

2

personal financial information and to sign the loan document," *id.* ¶ 27, though Wing Fung Chau and Wendy Chau dispute that he made such a commitment, Defs.' Statement ¶ 27.

In December 2019, Wing Fung Chau, Wendy Chau, and a representative of World Business Lenders met at Wing Fung Chau's office to finalize the loan agreement. *See* Pl.'s Statement ¶ 33; Defs.' Statement ¶ 33. The parties' accounts of the meeting differ. Axos Bank alleges that Wing Fung Chau "was not under any time pressure . . . to close the loan." Pl.'s Statement ¶ 34. Axos Bank cites Wing Fung Chau's deposition, in which he testified that he had an opportunity to read the documents before he signed them. Decl. of Alexander Malyshev ("Malshev Decl.") (Dkt. #84-2), Ex. 4 ("Wing Fung Chau Dep.") 125:04–06 (Dkt. #84-6). Wing Fung Chau and Wendy Chau, however, allege that no one "explained the contents of the loan documents," that they "did not have time to review the loan documents," and that they "were pressured to close the loan." Defs.' Statement Counterstatement ¶ 34. They further allege that World Business Lender's representative told Wing Fung Chau "it would be quicker if [he] used her lawyer" rather than "a lawyer of [his] own choice." Decl. of Wing Fung Chau ("Wing Fung Chau Decl.") ¶ 9 (Dkt. #85-2).

Ultimately, the meeting culminated in the execution of the following documents:

- ***Loan Agreement.*** Wing Fung Chau and Wendy Chau executed a loan agreement on behalf of 64-03 Realty. Decl. of Robert Pardes ("Pardes Decl.") (Dkt. #84-12), Ex. B ("Loan Agreement"), at 10 (ECF Pagination) (Dkt. #84-14). The agreement is on Axos Bank letterhead. *See ibid.* It designates Axos Bank as the lender and 64-03 Realty as the borrower. *Id.* ¶ 1. It states that 64-03 Realty "promise[s] to pay to the order of Axos Bank . . . two million dollars . . . plus interest" and that "the proceeds are disbursed" by Axos Bank. *Ibid.* (capitalization altered). It also specifies that 64-03 Realty should make payments to Axos Bank "at its offices" in "Las Vegas" or "at such other location or in such other manner as designated by" Axos Bank. *Ibid.* It sets forth an annual interest rate of 24% until June 26, 2020, at which point the interest rate increases to 36.99%. *Id.* ¶ 2. And it provides that, in the "event of default . . ., payment of principal and interest shall be deemed a prepayment," subject to a "prepayment premium equal to the greater of (a) [15%] of the amount of the unpaid principal as of the date of such prepayment [or] (b) the aggregate amount required to be repaid by borrower to lender . . . reduced by the sum of (i) the aggregate amount of any payments made by borrower to lender pursuant to [the payment schedule] before such prepayment and (ii) the amount of unpaid principal as of the date of such prepayment." *Id.* ¶ 4 (capitalization altered). It further provides that the

loan agreement "will be governed by federal law applicable to an FDIC insured institution and to the extent not preempted by federal law, the laws of the state of Nevada without regard to conflict of law rules." *Id.* ¶ 16(c) (capitalization altered). Finally, it clarifies that the loan agreement itself, along with "all related agreements, . . . including, without limitation any guaranty . . ., constitutes the entire understanding and agreement between or among" Axos Bank, 64-03 Realty, and "any guarantor." *Id.* ¶ 16(t) (capitalization altered).

- ***Guaranty.*** Wing Fung Chau and Wendy Chau executed a guaranty on behalf of themselves and 64-03 Realty. Pardes Decl., Ex. K ("Guaranty"), at 6–8 (ECF Pagination) (Dkt. #84-23). Like the loan agreement, the guaranty is on Axos Bank letterhead. *See ibid.* It designates Axos Bank as the lender, 64-03 Realty as the borrower, and "the undersigned" as the guarantors. *Id.* at 1. It provides that 64-03 Realty, Wing Fung Chau, and Wendy Chau "jointly and severally guarantee[] payment of . . . all debts, obligations and liabilities of borrower to lender arising out of credit previously granted, credit contemporaneously granted, or granted in the future by lender to borrower." *Ibid.* (capitalization altered). It grants Axos Bank "a security interest in any personal property tangible or intangible now owned or hereafter acquired by the guarantor[s], including . . . general intangibles including any equitable interest in business entities, personal properties, or investments." *Ibid.* (capitalization altered). It further provides for the payment of "costs, expenses and attorneys' fees . . . incurred . . . in endeavoring to collect all or part of any of the obligations" guaranteed by Wing Fung Chau and Wendy Chau. *Ibid.* (capitalization altered). Finally, it provides that the guaranty "will be governed by federal law applicable to an FDIC insured institution and to the extent no preempted by federal law, the laws of the state of Nevada without regard to conflict of law rules." *Id.* at 3 (capitalization altered).

- ***Mortgage Agreement.*** Wing Fung Chau and Wendy Chau executed an agreement mortgaging the residential building owned by 64-03 Realty and the unit inside that building owned by Wendy Chau. Pardes Decl., Ex. L ("Mortg. Agreement"), at 27–28 (Dkt. #84-24). The agreement lists 64-03 Realty and Wendy Chau as the mortgagors and Axos Bank as the mortgagee. *Id.* at 1. It provides that the mortgaged property "secure[s] the payment of all obligations which may or shall become due under the loan agreement and/or under any of the other documents evidencing, securing or executed in connection with the loan." *Id.* at 1 (capitalization altered).

- ***Business Loan Summary.*** Wing Fung Chau executed a business loan summary on behalf of 64-03 Realty. Pardes Decl., Ex. M ("Business Loan Summary"), at 2–3 (ECF Pagination) (Dkt. #84-25). It refers to 64-03 Realty as the borrower and Axos Bank as the lender. *Id.* at 2. It lists the "loan amount" as $2,000,000 but clarifies that the "disbursement amount" is $1,685,479.96 to account for $105,598 in "processing fees" and $208,922.04 in "adjustments." *Ibid.* (capitalization altered). It also included an "itemization" of the fees and adjustments. *Id.* at 4 (capitalization altered). The itemization of the adjustments includes $110,465.76 in "funds to be released upon satisfaction of escrow condition(s)" and $85,000 in "payoff for escrow for taxes." *Ibid.* (capitalization altered). Finally, the summary provides that the "borrower may make a full prepayment of unpaid principal at any time accompanied by a prepayment premium." *Id.* at 2 (capitalization altered).

- ***Escrow Agreements.***  Two escrow agreements were executed on behalf of 64-03 Realty, though it is unclear whether the signatures on those agreements belong to Wing Fung Chau or Wendy Chau.  *See* Pardes Decl., Ex. N ("First Escrow Agreement"), at 2 (ECF Pagination) (Dkt. #84-26); Pardes Decl., Ex. O ("Second Escrow Agreement"), at 2 (ECF Pagination) (Dkt. #84-27).  Both agreements list 64-03 Realty as the borrower and Axos Bank as the lender.  First Escrow Agreement 2; Second Escrow Agreement 2.  The first escrow agreement provides that Axos Bank will hold $85,000 in escrow pending Axos Bank's "receipt and acceptance of the payoff statement from the tax authority relative to the delinquent New York City real property taxes on the [c]ollateral property."  First Escrow Agreement 2.  The second escrow agreement provides that Axos Bank will hold $110,465.76 in escrow to cover the first twelve payments due on the loan agreement.  First Escrow Agreement 2.

- ***Business Loan Purpose Affidavit.***  Wing Fung Chau and Wendy Chau executed an affidavit stating that "the proceeds of the loan agreement . . . will be used for business purposes only, and not for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods."  Pardes Decl., Ex. J ("Business Loan Purpose Aff."), at 2 (ECF Pagination) (Dkt. #84-22) (capitalization altered).

Wing Fung Chau and Wendy Chau do not dispute that they executed the documents described above, but they claim that they "reluctantly signed the loan documents without knowing [their] contents under economic stress."  Defs.' Statement ¶¶ 42–43, 46–50.  The parties agree that after the documents were executed, a representative of World Business Lenders explained to Wing Fung Chau "the amounts being withheld from [64-03 Realty's] loan proceeds."  *Id.* ¶ 51; Pl.'s Statement ¶ 52.

64-03 Realty initially made the required weekly payments on the loan, though the parties' Rule 56.1 statements do not specify how much was paid.  *See* Pl.'s Statement ¶ 61; Defs.' Statement ¶ 60.  64-03 Realty ultimately stopped making weekly payments "around the time the COVID-19 pandemic began."  Pl.'s Statement ¶ 61; Defs.' Statement ¶ 60.  Wing Fung Chau wired World Business Lenders in $10,000 in May 2020 but has not made any payments since.  Pl.'s Statement ¶¶ 64, 68; Defs.' Statement ¶¶ 63, 67.

Axos Bank alleges that, as of December 12, 2022, the balance due under the loan agreement and guaranty is $4,904,070.45, based on the following calculations:

| | |
|---|---|
| Principal: | $2,000,000.00 |
| Interest: | $1,968,594.52 |
| NSF Fees: | $280.00 |
| Prepayment Premium: | $1,028,901.41 |
| Escrow Balance: | -$94,205.48 |

Pl.'s Statement ¶ 74.  Wing Fung Chau and Wendy Chau dispute Axos Bank's calculations.  Defs.' Statement ¶ 71.  In particular, Wing Fung Chau alleges that the "$110,465.76 being held . . . in escrow . . . has never been accounted for" and that he does not "quite understand" the application of a prepayment premium since he never made any prepayment.  Wing Fung Chau Decl. ¶¶ 23–24.

## II.  Procedural Background

Axos Bank filed this lawsuit in August 2020.  *See* Compl. (Dkt. #1).  Axos alleges that 64-03 Realty's default entitles Axos Bank to enforce the note against 64-03 Realty and the guaranty against Wing Fung Chau and Wendy Chau.  Am. Compl. ¶¶ 27–32 (Dkt. #10).  The complaint is styled as three causes of action: an "Action to Enforce the Note" against 64-03 Realty, *id.* ¶¶ 21–26; an "Action on a Personal Guaranty" against Wing Fung Chau and Wendy Chau, *id.* ¶¶ 27–32; and a claim for attorneys' fees, based on the terms of the note and guaranty, against all defendants, *id.* ¶¶ 33–34.  As relief, Axos Bank seeks money damages from all defendants, as well as attorneys' fees and costs. *Id.* ¶ 35.  The complaint also seeks a declaration that Axos Bank "is entitled to foreclose on the general intangibles pledged by the Guarantors"—that is, Wing Fung Chau and Wendy Chau's assets.  *Ibid.*  The complaint does not include a foreclosure claim regarding the property mortgaged by 64-03 Realty and it does not seek a declaration that it is entitled to foreclose on that property or any other asset of 64-03 Realty.  *See generally ibid.*

In their answer, defendants raise several affirmative defenses and bring a counterclaim for

attorneys' fees.  *See* Second Am. Answer ¶¶ 4–42 (Dkt. #57).

Axos Bank has now moved for summary judgment on its claim to enforce the guaranty and its claim for attorneys' fees.  It has also moved for summary judgment on Wing Fung Chau and Wendy Chau's counterclaim for attorneys' fees.  *See* Pl.'s Mem. of L. in Supp. of Mot. for Summ. J. ("Pl.'s MSJ") (Dkt. #84).  Wing Fung Chau and Wendy Chau filed an opposition.  *See* Defs.' Mem. of L. in Opp'n to Pl.'s Mot. for Summ. J. ("Defs.' Opp'n") (Dkt. #85).

In September 2023, while Axos Bank's motion for summary judgment was still pending, non-party Randall Funding filed a motion to intervene, apparently as a defendant, pursuant to Federal Rule of Civil Procedure 24.  *See* Proposed Intervenor's Mem. of L. in Supp. of Mot. to Intervene ("Mot. to Intervene") (Dkt. #98-1).

In support of its motion, Randall Funding asserts that it holds "by assignment" a judgment entered against 64-03 Realty in January 2023 in a related bankruptcy court action.  Decl. of Craig Stuart Lanza ("Lanza Decl.") ¶ 2 (Dkt. #98-2); *see* Lanza Decl., Ex. B ("Bankruptcy Court Judgment") (Dkt. #98-3).  Randall Funding also asserts that it filed the judgment with the Queens County Clerk, creating a lien on property owned by 64-03 Realty.  *See* Lanza Decl. ¶¶ 2–3; Bankruptcy Court Judgment.

Axos Bank opposed the motion.  *See* Pl.'s Mem. of L. in Opp'n to Mot. to Intervene ("Pl.'s Opp'n to Mot. to Intervene") (Dkt. #99).

### DISCUSSION

Randall Funding's motion to intervene is denied, and Axos Bank's motion for summary judgment is granted as to liability but not as to the amount due.

### I.   Randall Funding's Motion to Intervene

Randall Funding fails to satisfy the requirements for both intervention as of right under

Federal Rule of Civil Procedure 24(a) and permissive intervention under Federal Rule of Civil Procedure 24(b).

### A.  Intervention as of Right

Because Randall Funding has not asserted a cognizable interest that may be impaired by the disposition of this action, it is not entitled to intervene as of right.[2]  Under Rule 24(a)(2), a movant is entitled to intervene in a lawsuit if the movant can establish that "(1) the application is timely; (2) 'the applicant claims an interest relating to the property or transaction which is the subject matter of the action. . . .,' (3) the protection of the interest may as a practical matter be impaired by the disposition of the action; and (4) the interest is not adequately protected by an existing party." *Restor-A-Dent Dental Lab'ys, Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 874 (2d Cir. 1984) (quoting Fed. R. Civ. P. 24(a)(2)).

Randall Funding has failed to assert a sufficient interest under Rule 24(a).  A putative intervenor's interest must "be direct, substantial, and legally protectable." *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990).  "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Ibid.*  An interest is likewise insufficient under Rule 24 when it is asserted "as a means to inject collateral issues into an existing action." *Ibid.*

Randall Funding's asserted interest in this action arises from its judgment lien on 64-03 Realty's property.  *See* Mot. to Intervene 4.  It alleges that its lien is "junior to the mortgage held

---

[2] Plaintiffs argue that Randall Funding's motion should be denied because Randall Funding lacks standing to litigate the claims it wishes to press as an intervenor.  Pl.'s Opp'n to Mot. to Intervene 10.  Because, however, Randall Funding has not satisfied the requirements for intervention under Rule 24, I need not reach that question.  *See, e.g.*, *Extenet Sys., LLC v. Village of Kings Point*, No. 21-CV-5772, (KAM) (ST), 2022 WL 1749200, at *7 n.5 (E.D.N.Y. May 31, 2022) ("[B]ecause the proposed intervenors have not established the requirements for intervention as of right or permissive intervention, the Court need not, and therefore does not, address whether they have standing.").

by" Axos Bank but that the mortgage is a voidable fraudulent conveyance. *Ibid.*; *see id.* at 10. It further argues that a judgment in favor of Axos Bank in the instant action will "preclude" it from "challeng[ing] . . . the validity" of the mortgage in "a state court." *Id.* at 4. But Axos Bank does not seek to foreclose on the mortgaged property or seek any declaratory relief pertaining to the mortgage. Instead, it has brought only claims to enforce the loan agreement and guaranty. *See* Am. Compl. ¶¶ 21–32. Randall Funding's interest in establishing the invalidity of Axos Bank's asserted mortgage is therefore "remote from the subject matter of [this] proceeding." *Wash. Elec. Coop.*, 922 F.2d at 97.

Moreover, allowing intervention to assert such an interest would "inject collateral issues" into this case, *ibid.*—namely, whether the mortgage was a fraudulent conveyance. That issue is remote from the central issues raised by Axos Bank's complaint: whether defendants entered into a loan agreement and guaranty and whether Axos Bank can enforce that agreement and guaranty. Litigation over Randall Funding's asserted interest would distract from those central issues and would therefore be inappropriate. *See, e.g.*, *High Farms, LLC v. King*, No. 13-CV-0736 (NGG) (PK), 2021 WL 1137995, at *13 (E.D.N.Y. Mar. 25, 2021) (denying motion to intervene where the "[p]roposed [i]ntervenor s[ought] to inject collateral issues . . . that d[id] not pertain to the central issues of whether the parties entered into a loan agreement and whether that loan was repaid"). Randall Funding has therefore failed to assert an interest justifying intervention as of right under Rule 24(a).

For similar reasons, Randall Funding has not established that the disposition of this action may impair its asserted interest. Axos Bank seeks to recover debt secured by the mortgage rather than to foreclose on the mortgage itself. *See* Am. Compl. ¶¶ 21–32. Under New York law, as well as under Nevada law, an action to recover debt is separate from an action to foreclose on a

9

mortgage securing that debt.  *See Copp v. Sands Point Marina, Inc.*, 217 N.E.2d 654, 655 (N.Y. 1966) ("It is fundamental that the holder of a note (or bond) and mortgage has two remedies: one at law in a suit on the debt as evidenced by the note, the other in equity to foreclose the mortgage."); *Fox v. Bernard*, 85 P. 351, 352 (Nev. 1906) (same principle under Nevada law).  A decision in this action, then, will not determine whether Axos Bank can foreclose on the mortgaged property.  Nor will such a decision determine whether Axos Bank's mortgage takes priority over Randall Funding's lien.  Randall Funding has therefore failed to demonstrate that its asserted interest in the mortgaged property will be impaired by the disposition of this action.  *See, e.g.*, *Disney Enters., Inc. v. Finanz St. Honore, B.V.*, 288 F. Supp. 3d 546, 549 (E.D.N.Y. 2017) (holding that an asserted interest in property would not be impaired where state law dictated a separate "proceeding to determine whose right is superior" (citation omitted)).  Its motion to intervene as of right is therefore denied.

### B.  Permissive Intervention

Randall Funding's motion for permissive intervention likewise fails.  Under Rule 24(b), intervention is permitted to a movant who "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b).  "'[T]he words claim or defense in permissive intervention are not to be read in a technical sense' but rather should be read to require 'some interest' in the subject matter of the litigation."  *Cont'l Indem. Co. v. Bulson Mgmt., LLC*, No. 20-CV-3479 (JMF), 2020 WL 6586156, at *3 (S.D.N.Y. Nov. 10, 2020) (quoting *Louis Berger Grp. v. State Bank of India*, 802 F. Supp. 2d 482, 488 (S.D.N.Y. 2011)).  Courts therefore "consider[] substantially the same factors whether the claim for intervention is 'of right' under [Rule] 24(a)(2), or 'permissive' under [Rule] 24(b)(2)."  *R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006); *see Floyd v. City of New York*, 770 F.3d 1051,

10

1062 (2d Cir. 2014) (upholding denial of permissive intervention where putative intervenor failed to satisfy the requirements for intervention as of right).  Randall Funding's motion for permissive intervention therefore fails for the same reason as its motion for intervention as of right—Randall Funding has not asserted a cognizable interest that may be impaired by the disposition of this action.

## II.    Axos Bank's Motion for Summary Judgment

Axos Bank's motion for summary judgment is granted as to liability but not as to the amount due.  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a factual dispute is material if it "might affect the outcome of the suit under the governing law."  *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020).  In determining whether there is a genuine issue of material fact, a court evaluates the whole record, resolving all ambiguities and drawing all permissible factual inferences in favor of the non-movant.  *See ibid.*  A nonmoving party can survive summary judgment only if there is sufficient evidence to permit a rational trier of fact to find in that party's favor.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

Under those principles, Axos Bank is entitled to summary judgment on its claim to enforce the guaranty against Wing Fung Chau and Wendy Chau and its claim for attorneys' fees against those defendants, as well as on Wing Fung Chau and Wendy Chau's counterclaim for attorneys' fees.  But Axos Bank's motion for a damages award of $4,904,070.45 is denied without prejudice.

### A.  Axos Bank's Claim to Enforce the Guaranty

Axos Bank is entitled to summary judgment on both its *prima facie* claim to enforce the guaranty and Wing Fung Chau and Wendy Chau's affirmative defenses.  But because Axos Bank has not submitted sufficient information to support its damages calculation, its motion for a damages award is denied without prejudice.

### 1.  Axos Bank's *Prima Facie* Case

Axos Bank has established that it is entitled to summary judgment on its *prima facie* claim to enforce the guaranty.

As a threshold matter, the parties dispute whether Nevada or New York law should govern Axos Bank's claim to enforce the guarantee.  *See* Pl.'s MSJ 5–6; Defs.' Opp'n 8–9.  "[A] federal court sitting in diversity must generally apply the choice of law rules of the state in which it sits." *In re Coudert Bros.*, 673 F.3d 180, 186 (2d Cir. 2012).  "Choice of law does not matter, however, unless the laws of the competing jurisdictions are actually in conflict." *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004).  "Laws are in conflict where the applicable law from each jurisdiction provides different substantive rules." *Ibid.* (citation, quotation marks, and alteration omitted).  "In the absence of a substantive difference," courts may "dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it." *Ibid.*

When it comes to Axos Bank's *prima facie* case for enforcement of the guaranty, there is no conflict.  A guaranty is a type of contract, and the elements for breach of contract are substantively the same under both Nevada and New York law.  *Compare Padilla Constr. Co. v. Big-D Constr. Corp.*, 386 P.3d 982, 982 (Nev. 2016) ("[T]here are four elements to a claim for breach of contract in Nevada[:] (1) formation of a valid contract; (2) performance or excuse of

performance by plaintiff; (3) material breach by the defendant; and (4) damages." (citation and quotation marks omitted)), *with RCN Telecom Servs., Inc. v. 202 Centre St. Realty LLC*, 156 F. App'x 349, 350–51 (2d Cir. 2005) ("The elements of a breach of contract claim in New York are: (1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach.").

Axos Bank has established all four elements of a breach of contract claim—namely, the existence of a contract, performance, breach, and damages attributable to the breach. *See RCN Telecom Servs.*, 156 F. App'x at 350–51. There is no genuine dispute that Wing Fung Chau and Wendy Chau entered into a contract guaranteeing payment of 64-03 Realty's obligations to Axos Bank. *See* Defs.' Statement ¶ 46 (asserting that "[d]efendants were fraudulently induced" and did not understand the terms of the loan agreement but failing to dispute that they executed a guaranty with Axos Bank containing such terms). Nor is there a genuine dispute that "loan proceeds were remitted to [Wing Fung Chau's] account," *id.* ¶ 52, or that 64-03 Realty defaulted on the loan agreement, *id.* ¶¶ 60–67, causing Axos Bank to suffer damages in the form of lost principal and interest payments, *ibid.* Axos Bank has therefore established its *prima facie* case.

### 2. Wing Fung Chau and Wendy Chau's Affirmative Defenses

In their summary judgment brief, Wendy Chau and Wing Fung Chau raise the affirmative defenses of usury, unconscionability, and fraudulent inducement. *See* Defs.' Opp'n 11–13.[3] Each of those defenses fail.

***Usury.*** Wing Fung Chau and Wendy Chau first argue that the guaranty is unenforceable

---

[3] Wing Fung Chau and Wendy Chau raised additional affirmative defenses in their answer, *see* Second Am. Answer ¶¶ 4–41, that they do not advance in opposing summary judgment, *see* Defs.' Opp'n 11–13. Those defenses are abandoned. *See, e.g.*, *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) (stating that "a court may . . . infer from a [counseled] party's partial opposition" to summary judgment "that relevant . . . defenses that are not defended have been abandoned"); *Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021) (same).

because the interest rates in the loan agreement are usurious under New York law.  Defs.' Opp'n 11 (citing N.Y. Gen. Oblig. Law § 5-511).  In response, Axos Bank argues that a usury defense based on New York law is preempted under the Home Owners' Loan Act of 1933 ("HOLA"), 12 U.S.C. § 1461 *et seq.  See* Pl.'s MSJ 15.  As relevant here, HOLA provides that "a savings association may charge interest on an extension of credit . . . at the rate allowed by the laws of the State in which such savings association is located."  12 U.S.C. § 1463(g)(1).  Citing HOLA, Axos Bank maintains that, because it is a savings association located in Nevada, it may charge interest at the maximum rate allowed under Nevada law.  Pl.'s MSJ 17.  And because Nevada has no maximum interest rate, they argue that the interest rates in the loan agreement are lawful, despite exceeding the maximum rate allowed under New York law.  *Ibid.* (citing Nev. Rev. Stat. § 99.050(1)).  Wing Fung Chau and Wendy Chau, however, argue that because they primarily dealt with World Business Lender it "is not clear who . . . the lender of the underlying loan is" and that Nevada law therefore does not determine the maximum allowable interest rate.  Defs.' Opp'n 6.  They also argue that, even if Axos Bank is the true lender, it has not established that it is a federal savings association or that it is located in Nevada.  *Id.* at 7.

Wing Fung Chau and Wendy Chau's arguments are unavailing.  For starters, there is no genuine dispute that Axos Bank is the true lender.  Every document that Wing Fung Chau and Wendy Chau signed in connection with the loan explicitly names Axos Bank as the lender.  Loan Agreement ¶ 1; Guaranty 1; Mortg. Agreement 1; Business Loan Summary 2; First Escrow Agreement 1; Second Escrow Agreement 1.  And it was Axos Bank that, under the terms of the loan agreement, had an obligation to disburse loan proceeds to 64-03 Realty.  Loan Agreement ¶ 1.  Wing Fung Chau and Wendy Chau allege that, before they signed the documents associated with the loan agreement, World Business Lenders' representative told them that World Business

14

Lenders "was the lender."  Wing Fung Chau Decl. ¶ 17.  But they acknowledge that, under the terms of the agreements they signed, Axos Bank was the lender.  *See id.* ¶ 18 ("I did not know Axos was the lender until it commenced this action.").  There is therefore no genuine dispute that, under the terms of the loan agreement, Axos Bank obligated itself to disburse funds to 64-03 Realty and that Wing Fung Chau and Wendy Chau guaranteed repayment to Axos Bank.

Wing Fung Chau and Wendy Chau cite *Madden v. Midland Funding, LLC*, 786 F.3d 246 (2d Cir. 2015), in support of their argument that World Business Lender is the true lender, but that case is inapposite.  In *Madden*, the plaintiff, a resident of New York, brought a usury claim under New York law against debt collectors that had purchased debt the plaintiff owed to a national bank. *Id.* at 248.  The debt collectors maintained that the plaintiff's usury claim was preempted by the National Bank Act, 12 U.S.C. § 21 *et seq.*, which "permits national banks to 'charge on any loan . . . interest at the rate allowed by the laws of the State, Territory, or District where the bank is located.'"  *Madden*, 786 F.3d at 250 (quoting 12 U.S.C. § 85).  They argued that because they had purchased plaintiff's debt from a national bank incorporated in Delaware, they were entitled to charge Delaware interest rates on the loan.  *Ibid.*  The Second Circuit rejected that argument.  *Id.* at 251.  It acknowledged that preemption under the National Bank Act can apply "to a non-national bank entity" when "the entity has exercised the powers of a national bank—i.e., has acted on behalf of a national bank in carrying out the national bank's business."  *Ibid.*  But it concluded that the debt collectors could not invoke this preemption provision because they "acted solely on their own behalves, as the owners of the debt" in "attempting to collect on [the plaintiff's] debt."  *Ibid.*

Unlike the debt collectors in *Madden*, Axos Bank is not a non-national bank entity seeking to exercise the powers of a bank from which it has acquired debt.  Instead, it *is* a national bank— a federally chartered savings association located in Nevada.  *See* Loan Agreement ¶ 1; Guaranty

1.  Under HOLA, then, Axos Bank can charge interest at the maximum rate allowed under Nevada law.  12 U.S.C. § 1463(g)(1); *see Yeomalakis v. FDIC*, 562 F.3d 56, 59 (1st Cir. 2009) ("HOLA . . . preempts state usury laws.").  *Madden* does not suggest that HOLA preemption no longer applies merely because a savings association uses a third-party located in a different state to service the loan.

Wing Fung Chau and Wendy Chau nevertheless maintain that HOLA does not preempt their usury claim because Axos Bank "has failed to establish it is a federal savings association." Defs.' Opp'n 7.  But HOLA defines federal savings associations to include federally chartered banks, *see* 12 U.S.C. § 1462(3), and Axos Bank's registration with the Federal Deposit Insurance Corporation indicates that it is a federally chartered bank, *see* Pardes Decl., Ex. A ("FDIC Registration") (Dkt. #84-13).  Because Wing Fung Chau and Wendy Chau have submitted no evidence challenging Axos Bank's status as a federal savings association, there is no genuine dispute as to that issue.  *See Matsushita*, 475 U.S. at 587.

Finally, Wing Fung Chau and Wendy Chau argue that HOLA preemption does not apply because Axos Bank has not established that Nevada is its "home state."  Defs.' Opp'n 7.  Under HOLA, however, "a savings association may charge interest . . . at the rate allowed by the laws of the State" in which it "is located," 12 U.S.C. § 1463(g)(1), which includes the location of its branches, *see Pac. Cap. Bank v. Connecticut*, 542 F.3d 341, 352 (2d Cir. 2008) (holding that, under the National Bank Act's preemption provision, "a national bank is 'located' . . . in a state in which it has its main or branch offices"); *see also Cole v. Stephen Einstein & Assocs., P.C.*, 365 F. Supp. 3d 319, 333 (W.D.N.Y. 2019) (noting that the same standards that apply under the National Bank Act also apply to HOLA).  Wing Fung Chau and Wendy Chau do not dispute that Axos Bank has a branch office in Nevada.  *See* Defs.' Opp'n 7; *see also* FDIC Registration (showing that Axos

Bank has a branch office in Nevada); Loan Agreement ¶ 1 (listing address for Axos Bank's Nevada office).  HOLA therefore permits Axos Bank to charge interest at the maximum rate allowable under Nevada law and preempts Wing Fung Chau and Wendy Chau's usury defense based on New York law.  Axos Bank is accordingly entitled to summary judgment on that defense.

    ***Unconscionability.***  Wing Fung Chau and Wendy Chau next argue that the guaranty is unconscionable.  *See* Defs.' Opp'n 12.  Once again, the parties disagree as to whether Nevada or New York law should apply.  *See* Pl.'s MSJ 6; Defs.' Opp'n 9–10; *see also* Pl.'s Reply in Supp. of MSJ 13 (Dkt. #86) (arguing that the usury defense should be dismissed under Nevada law); Defs.' Opp'n 12 (citing New York law in support of their unconscionability defense).

    Unlike with plaintiff's *prima facie* case, there is a conflict between Nevada and New York law on unconscionability.  Under Nevada law, "[f]or any contract provision to be found unconscionable there must be both procedural unconscionability and substantive unconscionability."  *CVSM, LLC v. Doe Dancer V*, 435 P.3d 659, 659 (Nev. 2019).  By contrast, New York law recognizes "exceptional cases where a provision on the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone."  *Gillman v. Chase Manhattan Bank*, 534 N.E.2d 824, 829 (N.Y. 1988).  Because there is a conflict between Nevada and New York law, a choice-of-law analysis is necessary.  *See Global Net Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 382 (2d Cir. 2006).

    Federal courts in New York apply New York's choice-of-law rules.  *In re Coudert Bros.*, 673 F.3d at 186.  Under those rules, "courts will generally enforce choice-of-law clauses, because contracts should be interpreted so as to effectuate the parties' intent."  *AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 132 (2d Cir. 2018) (citations and quotation marks omitted).  Here, both the loan agreement and the guaranty have a choice-of-law clause that invokes Nevada law.

*See* Loan Agreement ¶ 16(c); Guaranty 3.

Wing Fung Chau and Wendy Chau nevertheless maintain that New York law should apply despite the choice-of-law clause because Nevada law does not bear a "reasonable relationship" to the transaction. Defs.' Opp'n 8. Under New York choice-of-law rules, courts will not "enforce a choice-of-law clause" unless "the chosen law bears a reasonable relationship to the parties or the transaction." *Welsbach Elec. Corp. v. MasTec N. Am., Inc.*, 859 N.E.2d 498, 500 (N.Y. 2006). Citing that rule, Wing Fung Chau and Wendy Chau emphasize that the parties negotiated the loans terms in New York and New Jersey, that the documents associated with the loan were signed in New York, that the loan was secured with property located in New York, and that 64-03 Realty and World Business Lender are located in New York and New Jersey. Defs.' Opp'n 9. They argue that, under those facts, there is no reasonable relationship to Nevada. *Ibid.*

"The relevant inquiry is not, however, whether the selected state is the state with the greatest number of connections to the parties or the transaction; rather, it is whether the relationship to the selected state is 'reasonable.'" *EMA Fin., LLC v. NFusz, Inc.*, 444 F. Supp. 3d 530, 541 (S.D.N.Y. 2020). Nevada has such a relationship. For starters, the parties agreed that the transaction should be governed by Nevada law. *See* Loan Agreement ¶ 16(c); Guaranty 3. In addition, the loan agreement provides that Axos Bank will "disburse[]" funds from its office in Nevada and specifies that payments can be made to the Nevada office. *Id.* ¶ 1. Case law in this circuit indicates that those connections are sufficient. *See Zerman v. Ball*, 735 F.2d 15, 20 (2d Cir. 1984) (finding that the state specified in a choice-of-law clause "had a reasonable relationship" to a loan transaction in part because the "loan was payable" there and because of the choice-of-law clause itself); *Cambridge Cap. LLC v. Ruby Has LLC*, 675 F. Supp. 3d 363, 420 (S.D.N.Y. 2023) (explaining that, under the reasonable relationship test, courts consider "performance under the

agreement, including where loan payments were received" (quoting *Madden v. Midland Funding, LLC*, 237 F. Supp. 3d 130, 148 (S.D.N.Y. 2017))).

Wing Fung Chau and Wendy Chau next suggest that application of Nevada law would violate New York public policy because Nevada's unconscionability laws do not invalidate usurious loans. *See* Defs.' Opp'n 10. New York courts do not enforce choice-of-law clauses "where the chosen law violates 'some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal.'" *Brown & Brown, Inc. v. Johnson*, 34 N.E.3d 357, 360 (N.Y. 2015) (quoting *Welsbach*, 859 N.E.2d at 501). But "[t]his public policy exception is reserved 'for those foreign laws that are truly obnoxious.'" *Ibid.* (quoting *Cooney v. Osgood Mach., Inc.*, 612 N.E.2d 277, 285 (N.Y. 1993)). And "[t]he party seeking to invoke the exception bears a 'heavy burden of proving that application [the chosen] law would be offensive to a fundamental public policy of'" New York. *Ibid.* (alteration in original) (quoting *Welsbach Elec.*, 859 N.E.2d at 503).

Though New York has a "longstanding public policy . . . in favor of enforcing its usury laws to protect those of its residents who enter into consumer debt contracts," *United States v. Moseley*, 980 F.3d 9, 22 (2d Cir. 2020), that policy is not "fundamental" when applied to "usurious transactions negotiated at arms-length by sophisticated entities," *Nfusz*, 444 F. Supp. 3d at 542 (citing *Seidel v. 18 E. 17th St. Owners, Inc.*, 598 N.E. 2d 7, 9 (N.Y. 1992)). "Courts in this District have thus been reluctant to invalidate choice-of-law clauses in commercial contracts in order to enforce New York's usury laws." *Ibid.* (collecting cases). Here, the underlying transaction was for a commercial rather than consumer loan. *See* Business Loan Purpose Aff. 2 ("[T]he proceeds of the [l]oan [a]greement . . . will be used for business purposes only, and not for personal, consumer, family or household purposes or to purchase personal, consumer, family or household

goods."). As a result, application of New York law would not serve to promote New York public policy. Instead, it would "undermine New York's interest in promoting certainty and predictability in commercial contracting." *Nfusz*, 444 F. Supp. 3d at 543; *see 159 MP Corp. v. Redbridge Bedford, LLC*, 128 N.E.3d 128, 133 (N.Y. 2019) ("By disfavoring judicial upending of the balance struck at the conclusion of the parties' negotiations, our public policy in favor of freedom of contract both promotes certainty and predictability and respects the autonomy of commercial parties in ordering their own business arrangements."). Nevada law therefore governs Wing Fung Chau and Wendy Chau's unconscionability defense.

Under Nevada law, "a contract clause is procedurally unconscionable when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract." *Tough Turtle Turf, LLC v. Scott*, 537 P.3d 883, 885 (Nev. 2023) (citation and quotation marks omitted). A contract is not procedurally unconscionable where the parties "ha[d] a meaningful opportunity to review the agreement." *Id.* at 886. Though Wing Fung Chau and Wendy Chau allege in their summary judgment brief that they did not have such opportunity, Defs.' Opp'n 13, Wing Fung Chau's deposition testimony contradicts that allegation. *See* Wing Fung Chau Dep. 125:04–06 ("Q. But you had time to read it before you signed it, correct? A. I could, yes."). And though Wing Fung Chau states in his declaration that he "did not have a chance to review the loan documents," Wing Fung Chau Decl. ¶ 12, "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996).

Wing Fung Chau and Wendy Chau's other allegations, even if credited as true, do not

establish that the agreement was procedurally unconscionable under Nevada law.  They allege that World Business Lenders provided an attorney for them, indicating it would be faster to use that attorney than one "of [their] own choice," Wing Fung Chau Decl. ¶ 9, that no one "explained . . . the contents of the loan documents" to them, Defs.' Opp'n 13, and that "the lawyer arranged by [Axos Bank] never met with them," *ibid.*  Yet under Nevada law, "[i]t is not the duty of a party to explain the legal effects of every provision of a contract." *CVSM, LLC*, 435 P.3d at 659.  Nor do Wing Fung Chau and Wendy Chau explain why the conduct they described denied them a "meaningful opportunity to agree" to the transaction. *Tough Turtle Turf*, 537 P.3d at 885.  Wing Fung Chau and Wendy Chau have therefore not established that the loan transaction was procedurally unconscionable under Nevada law, and Axos Bank is entitled to summary judgment on their unconscionability defense.

  ***Fraudulent Inducement.***  Wing Fung Chau and Wendy Chau next argue that they "were fraudulently induced to enter into the underlying loan."  Defs.' Opp'n 12.  But other than the conclusory statement that they were "fraudulently induced," Wing Fung Chau and Wendy Chau point to no evidence in support of a fraudulent inducement defense.  *See ibid.*  Because "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment," *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996), Axos Bank is entitled to summary judgment on Wing Fung Chau and Wendy Chau's fraudulent inducement defense.

  In sum, Wing Fung Chau and Wendy Chau have not raised any valid affirmative defenses, and Axos Bank is entitled to summary judgment on its claim to enforce the guaranty.

### 3.  Axos Bank's Claim for Damages

  Axos Bank next asks the Court to award it $4,904.070.45 in damages.  Pl.'s MSJ 8.  Axos Bank has not, however, established that the amount due on the guaranty is $4,904,070.45.  The

Court therefore reserves ruling on damages pending a supplemental submission from Axos Bank.

Axos Bank breaks down its calculations into the broad categories of "Principal," "Interest," "NSF Fees," "Prepayment Premium," and "Escrow Balance." *Id.* at 9. But the numbers Axos Bank provides for each category do not yield a sum of $4,904,070.45—they instead add up to $4,903,570.45. *See ibid.* In addition, Axos Bank does not provide any explanation for how it determined the numbers corresponding to each category. It does not explain, for instance, why the full amount of principal is still owed even though it is undisputed that 64-03 Realty made several payments on the loan. *See* Pl.'s Statement ¶¶ 61–64. To be sure, the loan agreement specifies that, in the "event of default," any "payment of principal and interest shall be deemed a prepayment," subject to a "prepayment premium," rather than payment on the principal. Loan Agreement ¶ 4 (capitalization). But Axos Bank does not provide any explanation for how it calculated the prepayment premium, *see* Pl.'s MSJ 9; Pl.'s Statement ¶ 74, which under the terms of the loan agreement, depends on the amount of unpaid principal, *see* Loan Agreement ¶ 4.

Indeed, the only documents Axos Bank submits in support of its damages calculations are what it describes as a "borrower statement," an "unsettled loan brief," and an "updated pay off statement." Pardes Decl. ¶¶ 54–56; *see* Pardes Decl., Ex. X ("Borrower Statement") (Dkt. #84-36); Pardes Decl., Ex. Y ("Unsettled Loan Brief") (Dkt. #84-37); Pardes Decl., Ex. Z ("Updated Pay Off Statement") (Dkt. #84-38). But those documents are just tables with numbers and do not themselves demonstrate how the prepayment premium was calculated. Nor do they explain the basis for Axos Bank's contention that it is owed "NSF" fees. Pl.'s MSJ 9. Axos Bank "cannot expect the Court to sift through its supporting documentation while engaging in guesswork to figure out how [they] reached the amount[] stated" in their motion. *U.S. Bank Nat'l Ass'n as Tr. for RMAC Tr., Series 2016-CTT v. Kozikowski*, No. 19-CV-0783 (DLI) (CLP) 2022 WL 4596753,

at *8 (E.D.N.Y. Sept. 30, 2022); *see Super Express USA Publ'g Corp. v. Spring Publ'g Corp.*, No. 13-CV-2814 (DLI) (JO), 2017 WL 1274058, at *11 (E.D.N.Y. Mar. 24, 2017) (declining to award damages where the plaintiffs' summary judgment motion "d[id] not set forth any information from which the [c]ourt c[ould] determine with any reliability whatsoever the proper calculation of damages").

Axos Bank shall therefore file a supplemental submission explaining the basis for its damages calculations, to which Wing Fung Chau and Wendy Chau may file a response.

### B.  Axos Bank's Claim for Attorneys' Fees

Axos Bank is entitled to summary judgment on its claim for attorneys' fees.  Under both Nevada and New York law, a court may award attorneys' fees provided for by agreement.  *See* Nev. Rev. Stat. § 18.010; *A.G. Ship Maint. Corp. v. Lezak*, 503 N.E.2d 681, 683 (N.Y. 1986). Because the guaranty provides for "all costs, expenses and attorneys' fees," Guaranty 1, Axos Bank is entitled to summary judgment on its claim for attorneys' fees.  In addition, Axos Bank's request for leave to file a supplemental submission in support of its application for attorneys' fees is granted.

### C.  Wing Fung Chau and Wendy Chau's Counterclaim for Attorneys' Fees

Axos Bank is likewise entitled to summary judgment on Wing Fung Chau and Wendy Chau's counterclaim for attorneys' fees.  Because Wing Fung Chau and Wendy Chau do not address Axos Bank's motion for summary judgment on that claim, it has been abandoned.  *See, e.g.*, *Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016) (explaining that a party's opposition brief "fairly supported an inference of . . . abandonment" on a claim because it "argued only that summary judgment should be denied as to" other claims).

**CONCLUSION**

For the foregoing reasons, Randall Funding's motion to intervene is denied, and Axos Bank's motion for summary judgment is granted in part and denied in part.  Axos Bank is entitled to summary judgment on its claim to enforce the guaranty and its claim for attorneys' fees, as well as Wing Fung Chau and Wendy Chau's counterclaim for attorneys' fees.  But Axos Bank's motion for a damages award of $4,904,070.45 is denied without prejudice.  Within thirty days, Axos Bank shall file a supplemental submission in support of its damages calculation and its application for attorneys' fees.  Wing Fung Chau and Wendy Chung may file a response within thirty days of the supplemental submission's filing.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: April 3, 2024
         Brooklyn, New York

24