UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x

AXOS BANK, a federally chartered savings
bank,

                    Plaintiff,

        v.

64-03 REALTY LLC, WING FUNG
CHAU, and WENDY CHAU,

                    Defendants.

------------------------------------------------------x

**MEMORANDUM AND ORDER**
20-cv-3549 (RPK) (CYP)

RACHEL P. KOVNER, United States District Judge:

Before this Court are Axos Bank's supplemental submission in support of its damages calculation and its application for attorneys' fees.  For the reasons that follow, the Court grants the motion for a damage award in full and the application for attorneys' fees in part.  Axos Bank is directed to file a summary chart by March 24, 2026, breaking down the hours and fees billed by timekeeper title.  Defendants may file a letter responding to the revised calculations by March 27, 2026.

## BACKGROUND

### I.      Procedural Background

Plaintiff Axos Bank brought this action seeking to enforce a promissory note against defendant 64-03 Realty LLC and a guaranty against defendants Wing Fung Chau and Wendy Chau.  *See* Amended Complaint (Dkt. #10).  A more detailed procedural history of this case is provided in the Court's memorandum and order filed on April 3, 2024.  *See* Mem. and Order 1–7 (Dkt. #116).  In that order, the Court granted Axos Bank's motion for summary judgment as to liability, including its claim to enforce the guaranty against Wing Fung Chau and Wendy Chau

1

and its claim for attorneys' fees against those defendants. *Id.* at 1, 11. The Court denied without prejudice Axos Bank's motion for a damage award of $4,904,070.45 because Axos Bank had not submitted sufficient information to support its damages calculation. *Id.* at 11–12.

The Court also granted Axos Bank's claim for attorneys' fees. In doing so, the Court noted that the parties' agreement "provides for the payment of 'costs, expenses and attorneys' fees . . . incurred . . . in endeavoring to collect all or part of any of the obligations.'" *Id.* at 4 (quoting Pardes Decl., Ex. K, at 6–8 (ECF Pagination) ("Guaranty") (Dkt. #84-23)). The Court held that this provision was enforceable under governing Nevada law. *Id.* at 23. Accordingly, the Court held that Axos Bank was entitled to summary judgment on its claim for attorneys' fees and granted Axos Bank's request for leave to file a supplemental submission in support of its application for attorneys' fees. *Ibid.* The Court granted Axos Bank thirty days to file a supplemental submission in support of its damages calculation and its application for attorneys' fees, allowing thirty days for the opposing parties to respond. *Id.* at 24.

Axos Bank has now filed a supplemental submission in support of its damages calculation and application for attorneys' fees. In support of its damages calculation, Axos Bank explains the balance due under its contract with Wing Fung Chau and Wendy Chau, and addresses the concerns raised in the Court's April 3, 2024 order. *See* Supp. Decl. in Supp. of Pl.'s Mot. for Summ. J. ("Damages Decl.") 2 (Dkt. #122). In its application for attorneys' fees, Axos Bank provides contemporaneous time records documenting the duration and nature of work done by each attorney and paraprofessional. *See* Decl. in Supp. of Pl.'s App. For Attorneys' Fees ("Attorneys' Fees Decl.") (Dkt. #121). Wing Fung Chau and Wendy Chau oppose Axos Bank's damages and attorneys' fees calculations. *See* Mem. of L. in Opp. to Pl.'s Supp. Decl. in Supp. of Its Mot. for

2

Summ. J. ("Opp. to Damages") (Dkt. #124); Defs.' Mem. of L. in Opp. to P.'s App. for Attorneys' Fees ("Opp. to Attorneys' Fees") (Dkt. #123).[1]

## II.     Underlying Facts

A.  The Business Promissory Note and Security Agreement

Wing Fung Chau and Wendy Chau signed a business promissory note and security agreement (the "Note") stating that 64-03 Realty LLC promised to pay a principal of two million dollars.  Pardes Decl., Ex. B, at 1 ("Business Promissory Note") (Dkt. #84-14).  The Note states that the unpaid principal carries an interest rate of 0.065753424658% per day until June 22, 2020, and 0.098630136986% per day thereafter.  *Ibid.*  The Note also sets out a schedule for paying the principal, and it provides that all payments made until June 22, 2020, go toward interest and not to the unpaid principal.  *Ibid.*  In addition, the Note imposes a $35 charge for certain payments. *Id.* at 2.  As relevant to the issue that the parties now dispute, the Note also sets out terms for a "prepayment premium":

> Borrower may prepay the unpaid Principal in full at any time, but may not make partial prepayments (except as permitted by applicable law). Any such prepayment of the unpaid Principal shall be accompanied by a prepayment premium equal to the greater of (a) fifteen percent (15%) of the amount of the unpaid Principal as of the date of such prepayment and (b) the aggregate amount required to be repaid by Borrower to Lender during the Repayment Period reduced by the sum of (i) the aggregate amount of any payments made by Borrower to Lender pursuant to Section 3 above before such prepayment and (ii) the amount of the unpaid Principal as of the date of such prepayment; provided, however, if any such prepayment is made on or before 6/22/2020 and during the period commencing on 12/30/2019 and ending on the date of such prepayment an Event of Default under subsection 10(a) below has not occurred, the prepayment premium shall be equal to the aggregate amount of interest required to be paid pursuant to Section 3 above during the period commencing on 12/30/2019 and ending on 12/20/2021 reduced by the aggregate amount of interest paid pursuant to Section 3 above during the period

---

[1] The Court also invited the parties to submit supplemental letters concerning whether the application of the usury laws of Nevada to Wing Fung Chau and Wendy Chau would violate fundamental public policy embodied in New York's usury laws.  Upon review of those letters, the Court remains persuaded that New York would allow the application of Nevada's usury laws because this contract is part of a business transaction between sophisticated entities, rather than a consumer contract.

3

commencing on 12/30/2019 and ending on the day prior to the date of such prepayment and, provided, further, if any such prepayment is made after 6/22/2020 and during the period commencing on 12/30/2019 and ending on the date of such prepayment an Event of Default under subsection 10(a) below has not occurred, such prepayment shall not be accompanied by a prepayment premium. The prepayment premium is in addition to any and all interest calculated and accrued on the unpaid Principal as of the date of such prepayment in accordance with Section 2 above together with all other amounts then due and payable under this Loan Agreement. . . . For the avoidance of doubt, as permitted under applicable law, if the Obligations (as defined below) have been accelerated on the happening of an Event of Default (as defined below), payment of Principal and interest shall be deemed a prepayment for purposes of this Section 4 and shall be accompanied by a prepayment premium.

*Id.* at 1–2.

Based on the obligations set forth in the Business Promissory Note, Axos Bank requests summary judgment in the amount of $5,788,769.07 through May 7, 2024, with interest accruing at a per diem rate of $1,972.60 until judgment is entered. *See* Damages Decl. 11. Defendants oppose this damages calculation, contesting only their obligation to pay a prepayment premium. *See* Opp. to Damages.

B. <u>Attorneys' Fees</u>

Wing Fung Chau and Wendy Chau signed an agreement to pay all "all debts, obligations and liabilities of Borrower to Lender." Guaranty at 1. Specifically, these obligations include:

all costs, expenses and attorneys' fees ('Collection Expenses') at any time paid or incurred (whether before or after judgment) in endeavoring to collect all or part of the Obligations, or to realize upon (i) this Guaranty, (ii) any other guaranty of the Obligations, or (iii) any collateral securing any of the Obligations, including those Collection Expenses which are either (v) incurred in a successful defense or settlement of any counterclaim brought by Borrower or Guarantor or (w) incident to any action or proceeding involving Borrower or Guarantor brought pursuant to the United States Bankruptcy Code.

*Ibid.*

Axos Bank provides documentation showing that its legal team charged discounted hourly rates for attorneys and paraprofessional staff pursuant to an hourly billing arrangement. *See*

4

Attorneys' Fees Decl. 3, 8–9 (listing amounts per hour for partners, counsels, associates, clerks, and legal assistants).   Based on these amounts, Axos Bank calculates that the attorneys' fees provision of the guaranty entitles Axos Bank to recover $184,280.20 in legal costs incurred directly in connection with this litigation, plus $81,691.50 in costs for work seeking to recover obligations from Wing Fung Chau and Wendy Chau related to the guaranty but not directly connected to this litigation.  *See* Attorneys' Fees Decl. 8.

Wing Fung Chau and Wendy Chau argue that they should not be liable for any fees that are "not within the scope of the complaint" and that the requested fees are not reasonable.  *See* Opp. to Attorneys' Fees 3–5.

## STANDARD OF REVIEW

The issue of damages, which turns on "[t]he proper interpretation of an unambiguous contract," is a "question of law for the court, and a dispute on such an issue may properly be resolved by summary judgment." *Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2002). In determining the reasonableness of attorneys' fees, "[d]istrict courts have broad discretion, using their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award." *Feltzin v. Union Mall, LLC*, 393 F. Supp. 3d 204, 212 (E.D.N.Y. 2019) (citation omitted).

## DISCUSSION

Axos Bank's damages motion is granted in full, and its motion for attorneys' fees is granted in part.  The hourly billing rate for the paraprofessionals is reduced to $200.

### I.    Damages

Axos Bank has provided adequate records substantiating its damages calculation, to which Wing Fung Chau and Wendy Chau do not raise meritorious objections.  Axos Bank has provided

5

a breakdown of the payment owed under the contract, including the premium, interest, prepayment premium, returned payment charge, and escrow balance. *See* Damages Decl. 2–11. Axos Bank also provides a record of loan activity to support its calculation of damages owed, *See* Damages Decl., Ex. 1 (Dkt. #122-1), and an unsettled loan brief showing the accrued and unpaid interest and fees on the borrowers' account, *see* Damages Decl., Ex. 2 (Dkt. #122-2). Based on these records and Axos Bank's explanations, the concerns expressed in the Court's previous memorandum and order are resolved. *See* Mem. and Order 11–12.

Wing Fung Chau and Wendy Chau dispute only whether Axos Bank is entitled to collect a prepayment premium and whether that premium is correctly calculated. Wing Fung Chau and Wendy Chau argue that under New York law, the prepayment premium clause is unenforceable because (1) it would not be difficult to determine Axos Bank's actual damages; (2) the prepayment premium is plainly disproportionate to the bank's possible loss; (3) the prepayment premium clause is ambiguous; and (4) the borrowers were not in intentional default. *See* Opp. to Damages 5–7. Each argument lacks merit.

As a preliminary matter, the parties dispute whether New York law or Nevada law applies. *See* Opp. to Damages 3–4; Mot. to Reply to Opp. 2. Wing Fung Chau and Wendy Chau assert, without explanation, that New York law applies to the enforceability of the prepayment premium. *See* Opp. to Damages 3–4. Axos Bank argues the Court has already held that the Note and all issues of its enforceability are governed by Nevada law. *See* Mot. to Reply to Opp. 2.

The Court need not decide which law applies. As explained in the Court's previous order, the Court must apply the choice-of-law-rules of the state in which it sits, but choice of law does not matter where there is no conflict between the laws of the competing jurisdictions. *See* Mem. and Order 12; *see also Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir.

2004).  Here, New York law is more favorable to Wing Fung Chau and Wendy Chau because it limits the enforceability of prepayment premium clauses, whereas Nevada law does not.  *See* Mot. to Reply to Opp. 2 (noting that neither party has identified any Nevada law case restricting the enforceability of prepayment premium clauses).  But even under New York law, Wing Fung Chau and Wendy Chau's argument fails.  Choice of law thus does not matter in analyzing the prepayment premium clause.

A prepayment premium allows a lender to protect the yield from a continuous income stream in the event that the borrower pays off the debt prematurely.  *See In re 1141 Realty Owner LLC*, 598 B.R. 534, 541 (Bankr. S.D.N.Y. 2019) ("When faced with a prepayment fee, the borrower will repay its debt only when the benefits from prepayment are greater than the fee. Prepayment clauses, in sum, allow a lender to negotiate for yield protection and a borrower to negotiate for freedom of action." (quoting Scott K. Charles & Emil A. Kleinhaus, *Prepayment Clauses in Bankruptcy*, 15 Am. Bankr. Inst. L. Rev. 537, 538 (2007) (brackets omitted))); *see also Sharon Steel Corp. v. Chase Manhattan Bank, N.A.*, 691 F.2d 1039, 1053 (2d Cir. 1982) (describing a prepayment premium as a "price upon the voluntary satisfaction of a debt before the date of maturity").

Under New York law, a prepayment premium is generally enforceable as a liquidated damages provision if the loan agreement contains "a clear and unambiguous provision call[ing] for payment of the prepayment premium."  *RREF III Storage LLC v. Paul*, 225 A.D.3d 576, 577, 208 N.Y.S.3d 152 (1st Dep't 2024).  *Cf. D.I.S., LLC v. Sagos*, 38 A.D.3d 543, 544, 832 N.Y.S.2d 581 (2d Dep't 2007) ("*absent a contractual provision to the contrary*," mortgagee could not assess a prepayment premium (emphasis added)). "A liquidated damages provision is 'an estimate, made by the parties at the time they entered into their agreement, of the extent of the injury that would

7

be sustained as a result of a breach of the agreement.'" *Of A Feather, LLC v. Allegro Credit Servs., LLC*, No. 21-1107, 2023 WL 2415607, at *2 (2d Cir. Mar. 9, 2023) (quoting *JMD Holding Corp. v. Cong. Fin. Corp.*, 828 N.E.2d 604, 609 (N.Y. 2005) (brackets omitted)).

To determine if a liquidated damages provision is enforceable under New York law, courts must ensure that the provision does not "call[] for a penalty." *Truck Rent-A-Ctr., Inc. v. Puritan Farms 2nd, Inc.*, 361 N.E.2d 1015, 1018 (N.Y. 1977).  Under this framework, the party seeking to avoid paying damages bears the burden of demonstrating either that (1) the damages flowing from prepayment were readily ascertainable at the time the parties entered into the lending agreement, or (2) the prepayment premium is "conspicuously disproportionate" to the lender's foreseeable losses.  *JMD Holding Corp.*, 828 N.E.2d at 609.  "This burden must be considered in light of the admonition that . . . courts should not interfere with the parties' agreement regarding liquidated damages 'absent some persuasive justification.'"  *In re 1141 Realty*, 598 B.R. at 542 (quoting *GFI Brokers, LLC v. Santana*, No. 06-cv-3988 (GEL), 2009 WL 2482130, at *2 (S.D.N.Y. Aug. 13, 2009) (Lynch, J.)); *see JMD Holding Corp.*, 828 N.E.2d at 609–10.

Here, the prepayment premium is enforceable because (1) the loan agreement contains a clear and unambiguous prepayment premium clause, and (2) Wing Fung Chau and Wendy Chau have not shown that the clause is an unenforceable liquidated damages provision.

### A.      Clear and Unambiguous Language

The parties' loan agreement contains "a clear and unambiguous provision call[ing] for payment of the prepayment premium" in the event of accelerated payment due to a default.  *RREF III Storage*, 225 A.D.3d at 577.  The loan agreement states:

> For the avoidance of doubt, as permitted under applicable law, if the Obligations (as defined below) have been accelerated on the happening of an Event of Default (as defined below), payment of Principal and interest shall be deemed a prepayment for purposes of this [section] and shall be accompanied by a prepayment premium.

Business Promissory Note at 2. There is "no genuine dispute" that the borrower in this case defaulted. Mem. & Order 13; Business Promissory Note at 6 (defining default as "failure by Borrower to pay any payment required by this Loan Agreement when due"). The loan agreement thus made clear and unambiguous that Wing Fung Chau and Wendy Chau must pay a prepayment premium in the event of default.

> **B.      Enforceability**

The next question is whether the prepayment premium provision is unenforceable because (1) the damages flowing from prepayment were "readily ascertainable" at the time the parties entered into the lending agreement, or (2) the prepayment premium is "conspicuously disproportionate" to the lender's foreseeable losses. *JMD Holding Corp.*, 828 N.E.2d at 609. Wing Fung Chau and Wendy Chau have not met their burden to show either factor. *See ibid.*

*First*, Wing Fung Chau and Wendy Chau fail to show that the damages flowing from prepayment were readily ascertainable at the time the parties entered into the loan agreement. "Potential losses from prepayment of a large fixed-rate, long-term [loan] are 'not subject to easy calculation.'" *In re Vanderveer Ests. Holdings, Inc.*, 283 B.R. 122, 130 (Bankr. E.D.N.Y. 2002) (quoting *United Merchants and Mfr., Inc. v. Equitable Life Assurance Soc'y of the United States*, 674 F.2d 134 (2d Cir. 1982)). "[F]actors that render the determination of potential damages difficult include the loss of interest to the lender, the rate of return on any substitute loan or loans, the duration of that loan (or those loans), the risk of the substitute loan or loans, and the extent and realizability of the collateral for the substitute loan or loans." *Ibid.* (citation omitted). The uncertainty about those variables for this loan suggests that potential damages would have been difficult to ascertain at the time the parties entered into the agreement.

9

Wing Fung Chau and Wendy Chau argue that "it is not difficult to determine actual damages." Opp. to Damages 4. This argument misses the point. The inquiry is not whether actual damages can be calculated after the fact, but whether potential damages were "readily ascertainable" at the time the agreement was formed. *JMD Holding Corp.*, 828 N.E.2d at 609; *see In re 1141 Realty*, 598 B.R. at 542 ("The enforceability of a liquidated damages provision must be decided based on the circumstances existing at the time the parties entered into their agreement."). Wing Fung Chau and Wendy Chau thus fail to meet their burden to show that potential damages were readily ascertainable.

*Second*, Wing Fung Chau and Wendy Chau have not met their burden to show that the stipulated sum is plainly or conspicuously disproportionate to foreseeable loss. In assessing whether a sum is plainly disproportionate to foreseeable loss, courts look to the uncertainty of potential loss, *see United Merchants*, 674 F.2d at 142–143, and the way the prepayment premium is calculated, *In re Vanderveer Ests. Holdings, Inc.*, 283 B.R. at 130. As discussed, the potential loss at the time of contract formation was difficult to ascertain. And the prepayment premium was reasonably calculated based on the amount of interest that would have been required absent default and acceleration, minus the amount of interest paid before default. *See* Business Promissory Note 1–2.

Wing Fung Chau and Wendy Chau conclusorily assert that the prepayment premium is "plainly disproportionate to the possible loss" because it is "more than 50% of the Principal." Opp. to Damages 6. They do not offer any estimate of foreseeable loss or attempt to compare the prepayment premium with foreseeable loss. This argument, "bereft of any legal or factual analysis," fails to meet Wing Fung Chau and Wendy Chau's burden to show that the prepayment

premium is plainly disproportionate to foreseeable loss. *In re 1141 Realty*, 598 B.R. at 542. The prepayment premium clause is therefore enforceable.

## II.     Attorneys' Fees

Axos Bank's application for attorneys' fees is granted in part. Wing Fung Chau and Wendy Chau object that (1) Axos Bank is not entitled to attorneys' fees for work outside the scope of this litigation, (2) Axos Bank is not entitled to attorneys' fees for unsuccessful motions, and (3) the fees are unreasonable. These arguments lack merit as applied to attorney timekeepers, but the Court agrees that the rates charged by paraprofessionals were unreasonably high. The Court thus lowers the paraprofessional rate to $200 an hour.

### a.  Work Unrelated to This Litigation

Axos Bank is entitled to attorneys' fees for work unrelated to this litigation because it falls within the scope of agreed-upon fees in the parties' loan agreement.

The guaranty signed by Wing Fung Chau and Wendy Chau provides for the payment of "costs, expenses and attorneys' fees . . . incurred . . . in endeavoring to collect all or part of any of the obligations" guaranteed by Wing Fung Chau and Wendy Chau. Mem. and Order at 4 (quoting Guaranty at 1). The guaranty further states that "Obligations include . . . all costs, expenses and attorneys' fees . . . at any time paid or incurred (whether before and after judgment) in endeavoring to collect all or part of any of the Obligations, or to realize upon (i) this Guaranty, (ii) any other guaranty of the Obligations, of (iii) any collateral securing any of the Obligations." Guaranty at 1. These provisions indicate that Axos Bank is entitled to attorneys' fees for all work "endeavoring to collect all or part of any of the obligations" guaranteed by Wing Fung Chau and Wendy Chau, even if not directly related to this litigation. *Id.* at 2, 6–8 (ECF pagination).

11

Wing Fung Chau and Wendy Chau offer no persuasive response.  They assert that because such work was "not within the scope of the Complaint"—in other words, not in service of Axos's federal lawsuit—it cannot be included in the attorneys' fees award.  Opp. to Attorneys' Fees 1–2.  But they fail to provide any legal argument or even cite the relevant contractual provision.  *See ibid.*  Given their failure to offer nonconclusory arguments or citations, this argument fails.  *See Restivo v. Hessemann*, 846 F.3d 547, 592 (2d Cir. 2017) (finding that a district court's fee determination was not an abuse of discretion when the "fee target has failed to offer either countervailing evidence or persuasive argumentation in support of its position" (quoting *United States ex rel. Keshner v. Nursing Pers. Home Care*, 794 F.3d 232, 236 (2d Cir. 2015))); *ibid.* ("[I]t is not the district court's job either to do the target's homework or to take heroic measures aimed at salvaging the target from the predictable consequences of self-indulgent lassitude." (quoting *Keshner*, 794 F.3d at 236 (brackets omitted))); *cf. Attia v. Soc'y of New York Hosp.*, 12 F. App'x 78, 79 (2d Cir. 2001) (finding "no error of law in the district court's decision to award costs and fees" when opposing party's appellate brief "contain[ed] no citation of law on the subject").

The Court therefore does not reduce the award for work not directly related to this litigation.

### b.  Unnecessary or Unjustified Work

The Court also does not lower Axos Bank's award for work that Wing Fung Chau and Wendy Chau describe as "unsuccessful."  Opp. to Attorneys' Fees 2.

As a matter of both New York and Nevada law, "[a]n award of an attorney's fee pursuant to a contractual provision may only be enforced to the extent that the amount is reasonable and warranted for the services actually rendered."  *Lupo v. Anna's Lullaby Cafe, LLC*, 189 A.D.3d 1205, 1208, 138 N.Y.S.3d 103 (2d Dep't 2020) (quoting *Vigo v. 501 Second St. Holding Corp.,*

121 A.D.3d 778, 779, 994 N.Y.S.2d 354 (2d Dep't 2014)); *Musso v. Binick*, 764 P.2d 477, 477 (Nev. 1988) (*per curiam*).  "The attorney bears the burden of establishing the reasonable value of the services rendered, based upon a showing of the hours reasonably expended and the prevailing hourly rate for similar legal work in the community."  *Loughlin v. Meghji*, 240 A.D.3d 875, 876, 240 N.Y.S.3d 132, 135 (2d Dep't 2025) (citation omitted).  But "the product of reasonable hours times a reasonable rate does not end the inquiry," *ibid.* (brackets and citation omitted), as courts must also consider "such factors as the time, effort, and skill required; the difficulty of the questions presented; counsel's experience, ability, and reputation; the fee customarily charged in the locality; and the contingency or certainty of compensation," *Vigo*, 121 A.D.3d at 780; *Brunzell v. Golden Gate Nat. Bank*, 85 Nev. 345, 349 (Nev. 1969) (similar).

Axos Bank's legal team charged discounted rates for attorneys and paraprofessionals pursuant to an hourly billing arrangement.  *See* Attorneys' Fees Decl. 3 & n.1.  From 2020–21, counsel charged a blended rate of $400 per hour for attorneys and $275 per hour for paraprofessional staff.  *Id.* at 3.  For the next two years, the blended rate was $450 for attorneys and $275 for paraprofessionals.  *Ibid.*  And for the past two years, the attorney blended rate was $650 and the paraprofessional blended rate was $250.  *Ibid.*  These attorney rates are generally in line with the prevailing billing rates in this district.  *See, e.g.*, *Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 243–44 (E.D.N.Y. 2025).  Over the course of five years, the legal team billed approximately 583.4 hours of work related to this action.  *See* Att'y Summ. Rep. 2–6 (Dkt. #121-10).  Counsel began corresponding with defendants in May 2020 in an effort to "have them cure the defaulted debt obligations," and continued working on this litigation for about five years. Attorneys' Fees Decl. 11; Att'y Summ. Rep. 2–6.  The attorneys who have worked on this case are, by and large, experienced commercial litigation attorneys.  Axos Bank's lead counsel has

fifteen years of commercial litigation experience, and the two other senior attorneys on the case had thirteen and fifty years of experience, respectively. Attorneys' Fees Decl. 5–6.

Wing Fung Chau and Wendy Chau begin by contending that Axos Bank's requested attorneys' fees are unreasonable because two of its filings were "unsuccessful": its motion for default judgment (Dkt. #41) and its request for a pre-motion conference to discuss plaintiff's anticipated summary judgment motion (Dkt. #75). *See* Opp. to Attorneys' Fees 2–3. Plaintiff's motion for default judgment was ultimately denied, *see* May 30, 2022 Order; although the Court determined that it did not need to hold a pre-motion conference regarding the summary judgment motion after reviewing the parties' letters, *see* Jan. 17, 2023, the ensuing summary judgment motion was granted in part, *see* May 1, 2024 Order.

Setting aside the fact that Axos Bank's pre-motion conference letter was required by the Court's rules and therefore a prerequisite to its successful summary judgment motion, Wing Fung Chau and Wendy Chau present no justification for deducting the costs of particular steps of Axos Bank's litigation activity. Indeed, "to justify an award of contractual attorneys' fees, the court need not adopt each claim raised in a lawsuit." *Bd. of Managers of 55 Walker St. Condo. v. Walker St., LLC*, 6 A.D.3d 279, 280, 774 N.Y.S.2d 701 (1st Dep't 2004). Instead, "the claimant must simply be the prevailing party on the central claims advanced, and receive substantial relief in consequence thereof." *Ibid*; *see Botwinick v. Duck Corp.*, 267 A.D.2d 115, 117, 700 N.Y.S.2d 143, 145 (1st Dep't 1999) (plaintiff was "prevailing party" within the meaning of "the parties' agreement" even though it "did not prevail in all of its contentions" given "the true scope of the dispute litigated, and comparing what each party achieved within that scope").

Axos Bank clears that hurdle here, as it prevailed in its summary judgment motion as to liability, including its claim to enforce the guaranty against Wing Fung Chau and Wendy Chau

14

and its claim for attorneys' fees against those defendants. *See* Mem. and Order 1, 11. Denial of Axos Bank's motion for a default judgment "did not vitiate [its] status as a prevailing party" because the bank ultimately succeeded on its "central claims" in its motion for summary judgment and "receive[d] substantial relief in consequence thereof." *Bd. of Managers of 55 Walker St.*, 6 A.D. at 280. *Cf. Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (explaining, in the context of a statute allowing the award of "a reasonable attorney's fee," that "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit").

Wing Fung Chau and Wendy Chau cite no legal authority suggesting that this well-established legal principle does not govern here. Their one citation is to Federal Rule of Civil Procedure Rule 54(d), which does not apply when attorneys' fees are recoverable pursuant to the terms of a contract, and says nothing about attorneys' fees for work done on unsuccessful motions. *See Cumberland Farms, Inc. v. Lexico Enterprises, Inc.*, No. 10-cv-4658 (ADS) (AKT), 2012 WL 526716, at *10 (E.D.N.Y. Feb. 16, 2012) (finding Rule 54(d) inapplicable when "recovery of attorney's fees and costs would be contractual"); *Hanley v. Herrill Bowling Corp.*, No. 94-cv-4611 (RPP), 1996 WL 79324, at *2 (S.D.N.Y. Feb. 23, 1996) ("[A]ttorneys' fees were recoverable pursuant to 'the terms of a contract' to which Rule 54(d)(2)(B) does not apply.").

Again, Wing Fung Chau and Wendy Chau's failure to "cite to any relevant precedent" or make "persuasive argumentation" makes their position unavailing. *Restivo*, 846 F.3d at 592 (citation omitted). The Court thus does not reduce the attorneys' fee award for work done on any unsuccessful motion.

### c. Reasonable Hours Worked and Hourly Rates

*Reasonable hours.* Axos Bank's legal team expended a reasonable number of hours on this dispute. *See Loughlin*, 240 A.D.3d at 876. There is no indication that counsel billed hours

15

that were "excessive, redundant, or otherwise unnecessary," *Hensley*, 461 U.S. at 434, and Wing Fung Chau and Wendy Chau do not to appear to argue as much, *see* Opp. to Attorneys' Fees 2–3. The legal team billed between 59 and 256 hours per year working on this dispute, for a total of about 583 hours. *See* Att'y Summ. Rep. 2–6. This figure is far from excessive on its face, *cf. Knox v. John Varvatos Enters. Inc.*, 520 F. Supp. 3d 331, 346 (S.D.N.Y. 2021) (5,035 hours)*, aff'd sub nom. Chaparro v. John Varvatos Enters., Inc.*, No. 21-446, 2021 WL 5121140 (2d Cir. Nov. 4, 2021), and defendants have not challenged any individual component of the bank's time spent on this case. Accordingly, the Court finds that Axos Bank's legal term expended a reasonable number of hours on this action.

*Reasonable rates.* The hourly rates charged by the attorneys in Axos Bank's legal team are in line with "the fee customarily charged in the locality." *Vigo*, 121 A.D.3d at 780. The team charged discounted hourly rates for attorneys and paraprofessional staff pursuant to an hourly billing arrangement. *See* Attorneys' Fees Decl. 3, 8–9. Between 2020 and 2021, the legal team charged a blended rate of $400 per hour for attorneys and $275 per hour for paraprofessional staff. *Id.* at 3. From 2022 to 2023, the blended rate was $450 for attorneys and $275 for paraprofessionals. *Ibid.* And beginning in 2024, the attorney blended rate was $650 and the paraprofessional blended rate was $250. In other circumstances, similar attorney rates have been approved by courts as reasonable. *See, e.g.*, *Toyota Lease Tr. v. Vill. of Freeport*, 2024 U.S. Dist. LEXIS 26841, at *23–25 (E.D.N.Y. Feb. 15, 2024) (approving rates of $630 for lead partner and $425 for associates and citing cases approving similar rates); *Zhongli Sci. & Tech. Grp. v. Fir Tree Partners*, 2023 U.S. Dist. LEXIS 194351, at *11 (E.D.N.Y. Oct. 30, 2023) (approving rates of $900 for partners and counsels and $600 for associates).

But the same cannot be said for the rates charged by paraprofessionals—as Axos Bank's own cases make clear. "The prevailing rate for paralegals in this district is between $100 and $200 per hour." *Toyota Lease*, 2024 U.S. Dist. LEXIS 26841, at *25 (internal quotation marks and citation omitted); *Zhongli*, 2023 U.S. Dist. LEXIS 194351, at *11 (approving $200 rate for non-legal staff); *Tabatznik v. Turner*, No. 14-cv-8135 (JFK), 2016 WL 1267792, at *12 (S.D.N.Y. Mar. 30, 2016) (decreasing paralegal rate to $200); *see 1979 Fam. Tr. Licensor, LLC v. Darji*, No. 19-cv-4389, 2020 WL 9596279, at *1 (S.D.N.Y. Sept. 30, 2020) (collecting cases for the proposition that "[c]ourts in this district typically approve paralegal hourly rates between $150 and $200"). Accordingly, the Court lowers the hourly rate for paraprofessionals to $200.

The Court cannot calculate the revised attorneys' fee award in light of this reduction, however, because Axos Bank's supporting documentation contains mathematical discrepancies. The bank's Attorneys' Fees Declaration requests $249,713.50 in attorneys' fees. *See* Attorneys' Fees Decl. 13. This figure matches an invoices report that Axos Bank attached as Exhibit H. But that document does not list the time billed per attorney or title, so the Court cross-checked the figures against the annual attorney summary report that Axos Bank attached as Exhibit J. This exhibit does list the amounts billed per year by attorney, but the problem is that the amount requested in attorneys' fees does not match this exhibit. Summing the "revised amounts" billed per year in Exhibit J, the total comes out to $271,884.00.[2] Adding to the confusion, the Attorneys' Fees Declaration also contained a "chart summariz[ing] the timekeepers who performed work on this matter on an annual basis," including each timekeeper's title. *See* Attorneys' Fees Decl. 8–9.

---

[2] The calculation is as follows: $27,481.25 in 2020 + $22,221.25 in 2021 + $46,087.50 in 2022 + $110,552.50 in 2023 + $65,541.50 in 2024 = $271,884.00.

17

But adding up the values in this chart—which Axos Bank did not do—leads to a completely different number: $268,052.50.[3]

As a result, Axos Bank is directed to file a new summary chart by March 24, 2026, breaking down the hours and fees billed by timekeeper title. The Court will then adjust the attorneys' fees award accordingly.

## CONCLUSION

For the foregoing reasons, the Court grants plaintiff's motion for a damage award in full and its application for attorneys' fees in part. Axos Bank is directed to file a summary chart by March 24, 2026 breaking down the hours and fees billed by timekeeper title. Defendants may file a letter responding to the revised calculations by March 27, 2026.


SO ORDERED.

/s/  Rachel Kovner
RACHEL P. KOVNER
United States District Judge

Dated:  March 18, 2026
   Brooklyn, New York

---

[3] The calculation is as follows: 16.1 hours worked at $650.00 + 67.6 hours worked at $450.00 + 21 hours worked at $450.00 + 22.1 hours worked at $400.00 + 35.8 hours worked at $400.00 + 22.4 hours worked at $650.00 + 81.3 hours worked at $450.00 + 77.6 hours worked at $450.00 + 25.8 hours worked at $400.00 + 18.2 hours worked at $400.00 + 36.5 hours worked at $650.00 + 59.6 hours worked at $450.00 + 1.2 hours worked at $450.00 + 0.8 hours worked at $400.00 + 6.9 hours worked at $400.00 + 15.1 hours worked at $650.00 + 24.9 hours worked at $400.00 + 0.75 hours worked at $400.00 + 6.7 hours worked at $400.00 + 0.5 hours worked at $275.00 + 0.5 hours worked at $275.00 + 1 hour worked at $250.00 + 7.9 hours worked at $275.00 + 3 hours worked at $275.00 + 7.55 hours worked at $275.00 + 9.55 hours worked at $275.00 + 0.6 hours worked at $275.00 + 0.8 hours worked at $275.00 + 1 hour worked at $275.00 + 3 hours worked at $275.00 + 1 hours worked at $275.00 + 14.2 hours worked at $275.00 + 0.3 hours worked at $275.00 = $268,052.50.